HOLDRIDGE *v.* McKEWEN.

Opinion delivered March 17, 1913.

1.  MASTER—REFERENCE—APPOINTED BY CONSENT—CONCLUSIVENESS OF REPORT.—Where a master is appointed with the consent of the parties to a suit in equity, his findings of fact have the same conclusiveness as the verdict of a jury. (Page 372.)

2.  Appeal and error—conclusiveness of master's findings.—When there is no reference to a consent master of questions of law, the parties are not bound by his conclusions of law.  (Page 372.)

3.  Partners—may vary terms of agreement—Partners may make variations in the terms of their agreement after the partnership has been entered into.  (Page 372.)

4.  Partnership—agreement—consideration—mutual promises.—The mutual covenants and promises of partners are a sufficient consideration to support the terms of their agreement.  (Page 373.)

5.  Partnership—varying terms of agreement—consideration.—When partners are doing a business upon a cash basis, and they agree to vary their course of dealing by defendant's taking notes for the purchase price on the sale of stock, he agreeing to pay plaintiff the cash later, and it was agreed that plaintiff should not be charged with any losses due to bad debts. Held, the change in the course of dealing and the adjustment of the differences of the partners in regard to making sales on time was a sufficient consideration to support the agreement, that plaintiff should not stand any of the loss, and the same was a valid and enforceable agreement between the parties.  (Page 373.)

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*John L. Ingram* and *Powell Clayton,* for appellant.

The master having been appointed by consent of parties, his findings of fact are conclusive, but his conclusions of law are not binding, and, if erroneous, will be set aside.  74 Ark. 336.

The conversation in the mule pen at Stuttgart, more than a year after the partnership was entered into, did not amount to a contract, but was a mere conference between the partners as to the advisability of pursuing a course which either party could pursue without authority from the other.

There was no consideration to support a contract on the part of appellant to stand the losses on sales made on time.  It is a question of law as to what constitutes a sufficient consideration.  8 Humph. (Tenn.) 697.

*J. M. Henderson,* for appellee.

1.  The conversation between the parties at the mule pen amounted to a contract, the effect of which was, that

as to McKewen, appellant took the notes in lieu of cash and used McKewen's part of the money until the succeeding fall. The benefits to Holdridge in receiving interest on the notes and in the use of McKewen's part of the profits constituted a sufficient consideration for the contract. 124 N. Y. 538, and authorities cited.

2. The master's findings were even more favorable to the appellant than the testimony would warrant; but, being a consent referee or master, his findings have the weight of a verdict of a jury. 92 Ark. 362, 363; 101 Ark. 15, 16.

3. Appellant's exceptions to the master's report, on the grounds (1) that said report is contrary to law, and (2) is not sustained by the evidence, are too indefinite and uncertain to merit consideration. 16 Cyc. 451, 452; 35 S. W. 762; 129 Mass. 517; 21 D. C. 128; 43 Ill. App. 611; 106 N. C. 107; 12 Mich. 314; 48 W. Va. 639; 37 S. E. 526.

HART, J. L. W. Holdridge and C. P. McKewen were partners dealing in live stock. They formed a partnership in the beginning of the year 1907. Holdridge agreed to furnish the money with which to purchase the live stock and to aid in buying and selling he same. McKewan was to purchase and aid in the purchase and sale of stock and care for same while in his control. The expense of feeding and caring for the stock while in McKewen's possession and of getting them to market was to be borne equally by the partners and the profits were to be divided equally. The partnership continued until sometime in the year 1909, and during this time the firm bought and sold 391 hogs, 372 cattle and 96 head of mules and horses.

McKewen instituted this action in the chancery court against Holdridge for a settlement and accounting of the affairs of the partnership. He alleges that Holdridge was to take care of the account of sales and that the account between the partners is long and complicated and that they were unable to agree upon a settlement and adjustment of the partnership accounts. By agreement

of the parties, J. W. Allen was appointed master to state an account between them. The master proceeded to take testimony and made a detailed statement of the account between the parties and his finding thereon. He found that Holdridge was indebted to McKewen in the sum of $707, and so reported to the chancellor. The chancellor confirmed the report of the master, and a decree was entered accordingly. Holdridge has appealed.

The principal exception to the account of the master upon which Holdridge relies for a reversal of the decree is that the master found that Holdridge should be charged with the losses on certain uncollected notes which were taken in payment of horses and mules sold by the firm. In regard to this item, McKewen testified:

"Mr. Holdridge came to me there in the mule pen at Stuttgart, at his house, and said to me that we could sell the mules at a better price if we could sell them and take notes, but he did not want to sell them on time and pay my part in cash. I told him if he would take the notes approved that I would wait till fall for my money. He did take the notes, and said all right."

McKewen further testified: I told Holdridge I could carry the notes, but if he wanted to take the notes and pay me in the fall I would wait. Holdridge agreed to pay me in the fall my share of the amount of the sale price of the mules, and my share was not dependent upon the collection of the notes given for the purchase price of the mules. Holdridge took these notes payable to himself individually with the exception of two or three notes which I took and made payable to him. He did not object to the security taken by me. Holdridge sued on one of these notes in his own name. Holdridge sold some of the mules to share croppers on his farm. The agreement was that Holdridge was to pay me in the fall, and I did not look to the collection of the notes for my money. The notes bore interest from the date they were executed.

John McGahhey testified: I was present and heard the agreement between Holdridge and McKewen in regard to the sale of some of the mules on time. Holdridge

told McKewen that it would be a quicker sale but he did not feel like paying him money on the notes at that time. McKewen replied that if Holdridge would approve the notes and take them he would wait until next fall for his money. Holdridge agreed to this and several of the mules were sold on time. Notes for their purchase price were given to Holdridge and he approved them. The agreement was made in December, 1908, and the parties had reference to the fall following. Holdridge was to pay McKewen his part of the money in the fall of 1909.

Holdridge testified for himself, and denied that he made any such agreement with McKewen. He said that the notes were taken in his name because he handled the sale end of the business. It is conceded by Holdridge that the master was appointed at the request and with the consent of the parties, and that his findings of fact have the same conclusiveness as the verdict of a jury or the findings of fact of a court sitting as a jury. See *McDonald* v. *Kenny*, 101 Ark. 15; *Carr* v. *Fair*, 92 Ark. 362. It is contended, however, by Holdridge that there was no express reference to the master of questions of law and, therefore, the parties are not bound by his conclusions of law. See *McVeigh* **v.** *Chicago Mill & Lumber Co.*, 96 Ark. 480. Therefore, Holdridge insists that, even if it be taken as established by the findings of the master that the agreement in question was made, such agreement was without consideration and had no binding force. We can not agree with his contention. It is true that the same rules of construction apply to agreements between partners as in other cases and that such agreements must be founded upon some consideration. When the partnership is formed the mutual covenants and promises of the partners with respect to the common enterprises are regarded as constituting a sufficient consideration. Gilmore on Partnership, page 89; Bates on the Law of Partnership, Vol. 1, § 2; George on Partnership, page 17.

It is well settled that the partners may make variations in the terms of their agreement after the partner-

ship has been entered into. *Hall* v. *Sannoner,* 44 Ark. 34.

Prior to the agreement in question the business of the partnership had been conducted on a cash basis. Neither of the partners had any right to change this course of dealing against the will of the other. Holdridge desired to make the change and McKewen opposed it. In order to settle their differences in this respect they made an agreement that McKewen should not be charged with any losses that might result from selling the mules on time, and the general rule that all partners must bear equally the losses does not prevail where the liability of one of them is limited in that respect by express agreement. The change of their course of dealing and the adjustment of their differences in regard to selling the mules on time was a sufficient consideration for the agreement.

Moreover, the testimony shows that the agreement was made in December, 1908, and McKewen was not to be paid until the fall of 1909. The notes given for the mules bore interest from date and, under the terms of the agreement, Holdridge was to receive this interest. Therefore, we hold that the agreement between the partners that McKewen should not be charged with the losses resulting from bad debts in the sale of the mules was founded upon a sufficient consideration, and is a valid and enforceable agreement between the parties. See *Hall* v. *Sannoner, supra.*

It is finally insisted by Holdridge that the findings of the master are without evidence to support them. As we have already seen, the appointment of the master having been made by the consent of the parties and on their motion, his findings are conclusive upon questions of fact and are as binding as the verdict of a jury. The testimony in the case stating the accounts between the parties is voluminous and complicated. The report of the master shows that he carefully considered the evidence in all its details and that his report was made after a close and painstaking consideration of the evidence.

No useful purpose could be served by setting out the evidence at length and making extended comments thereon. We deem it sufficient to say that the findings made by the master are supported by the evidence and, under the rule above announced, will not be disturbed upon appeal.

The decree will be affirmed.