BLYTHE, MARKLEY, RULE & SMITH, Appellee, v. A. H. CUMMINGS, Appellant, et al..

**FRAUDS, STATUTE OF:**   Partnership in Real Estate.   Partnership 1    agreements for the purchase and sale of real estate may be proved by parol evidence.

**PARTNERSHIP:**   Agreement—Evidence.   Evidence held to establish a 2    partnership for the purchase and sale of real estate.

**CONTRACTS:**   Consideration—Mutual Covenants.   Mutual covenants 3    are sufficient consideration for a contract.

**CONTRACTS:**   Legality—Voidability Not Presentable by Third Party. 4    The right to avoid a contract is personal to the party to the contract.   A third party may not avail himself of such right, especially when the party to the contract has full knowledge of the facts which render avoidance possible, and fails to avail himself of it.   So held

where an agent for the sale of land entered into a partnership agreement with another for the purchase of the land, and the latter refused to account.

*Appeal from Cerro Gordo District Court.*—JOSEPH J. CLARK, Judge.

MARCH 16, 1920.

REHEARING DENIED FEBRUARY 17, 1921.

SUIT in equity for an accounting. Plaintiff's petition was dismissed by the court as to the defendant Bowles, and a decree entered against the defendant Cummings, who alone appeals.— *Affirmed.*

*E. P. Andrews* and *Smith & Rinard,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellee.

STEVENS, J.—I. The members of plaintiff firm, and the defendant Cummings, are attorneys residing at Mason City, Iowa. Plaintiff brings this action for an accounting, alleging in its petition, in substance, that, in January, 1916, plaintiff and defendant Cummings entered into an oral contract of partnership for the purchase, improvement, and sale of the NW¼ and the W½ of the NE¼ of Section 15, Township 95, Range 20, Cerro Gordo County, Iowa, each agreeing to pay one half of the purchase price over and above a mortgage to be executed thereon by defendant for the largest amount obtainable, together with one half of the expenses incident to the purchase, improvement, and sale of the land, and to share equally the profits and losses; that the negotiations were to be carried on, and title to the land taken, in the name of defendant; that, in pursuance of said oral agreement and understanding, the defendant, on March 11, 1916, entered into a contract in writing with the owners of 200 acres of said land for the purchase thereof at $90 per acre, paying $500 cash upon the execution of the contract, and agreeing to pay the balance upon delivery of the deeds conveying the land to him; that plaintiff, at divers times,

tendered and offered to pay defendant one half of the purchase price advanced, and in excess of the mortgage to be executed and of the expenses incurred, but that defendant each time requested plaintiff to defer the matter until the transaction was finally closed, when he would make a complete statement to plaintiff of the amount due, at which time payment might be made; that the defendant, without knowledge or consent of plaintiff, sold said land to one Stewart, receiving $140 per acre therefor, and refuses to account to plaintiff for any part of the profits realized.

Defendant for answer admits the purchase and sale of the land, but denies absolutely the alleged oral partnership agreement, or that plaintiff ever at any time acquired or had an interest in said land. The 240 acres in question were formerly owned by one Stephen Bailey, a resident of Colorado, who, by his will, devised the same in 40-acre tracts to collateral heirs, residing in Minnesota, except one 40, which he gave to a Mrs. Osgood, a friend residing in Massachusetts. All of the negotiations for the purchase of the 200 acres owned by the collateral heirs were conducted by Mr. Cummings with one J. W. Rowland, recorder of deeds at Owatonna, Minnesota, who was the agent of the owners for the sale thereof. The negotiations for the purchase of the 40-acre tract owned by Mrs. Osgood were conducted by plaintiff through Benner & Brown, her attorneys at Boston, Massachusetts. The price paid for the Osgood 40 was $3,000.

Counsel for appellant relies for reversal upon the following propositions: (a) That the evidence is insufficient to establish the alleged partnership agreement, but at most shows only an agreement to purchase an interest in the land after title was vested in defendant, and that the evidence offered to prove same was, therefore, incompetent, under the statute of frauds; (b) that no services were rendered by any member of plaintiff firm, nor any part of the purchase price or expenses incurred by the defendant paid or tendered by plaintiff; (c) that, at the time it is claimed the alleged oral agreement was entered into, plaintiff firm was attorney and agent for the owners of said land, and that, if it should be found that an agreement was entered into between the parties, as claimed, it was illegal and unenforcible, as against the defendant in equity; and (d) that,

in any event, the amount found due by the court was too large.

As we understand the position of counsel in argument, they do not claim that, if an oral agreement between the parties, based upon a valid consideration to purchase the land jointly for the purpose of improving and selling same at a profit, is shown, the evidence is incompetent because within the inhibitions of the statute. It is well settled that a partnership agreement for the purchase and sale of real estate may be proven by parol testimony. *Richards v. Grinnell*, 63 Iowa 44; *Pennybacker v. Leary*, 65 Iowa 220; *Doyle v. Burns*, 123 Iowa 488; *Hammel v. Feigh*, (Minn.) 173 N. W. 570.

1. FRAUDS, STATUTE OF: partnership in real estate.

But we do not understand counsel for appellant to dispute this proposition. It is their contention that the agreement, if any is shown by the evidence, was for the purchase of an interest in the land when acquired by defendant, and that, therefore, the statute applies. All of the members of plaintiff firm testified to the alleged oral contract of partnership, and also to numerous conversations with the defendant Cummings, concerning improvements to be placed upon the land. These conversations are denied by defendant, except that he concedes that there was a talk between himself and Mr. Rule in 1915, when they were returning from a visit to the land, where appellant, with others, went to appraise it for the assessment of the collateral inheritance tax. Without reciting the evidence in particular detail, it may be safely said that the testimony of the several members of plaintiff firm fairly and clearly established the alleged copartnership agreement. Rule, Markley, and Blythe testified specifically and in detail that such an agreement was entered into. From their testimony it appears that Mr. Rule knew some of the Minnesota parties personally, and that J. W. Rowland was agent for the sale of the land; that plaintiff was attorney and agent for Mrs. Osgood, who was also represented in Boston by Benner & Brown, attorneys; that, after the alleged agreement was entered into, Mr. Rule gave appellant a letter of introduction to Rowland, with whom he had previously talked concerning the sale of the land; that appellant presented the letter to him, and that, thereafter, the written contract of March 11th was executed; that plaintiff,

2. PARTNERSHIP: agreement: evidence.

through Benner & Brown, procured the deed from Mrs. Osgood, conveying the 40 acres owned by her to appellant, and delivered same to him in February, 1916; that appellant paid the consideration by his personal check to Mr. Rule, who testified that he then offered to pay one half of the amount; that, about the middle of June following, when the deal was finally consummated, Mr. Blythe went to an abstract office in Mason City, where he understood defendant and Mr. Rowland had gone for some purpose in connection with the transaction, and introduced himself to Rowland, in the presence of appellant, inquiring if he had come to Mason City to close the land deal; that appellant immediately called Blythe to one side, where some conversation was had between them, but the evidence is in direct conflict as to what was said between them; that, on the same day, or shortly thereafter, Mr. Blythe prepared a contract in writing, embodying the terms of the oral agreement, and presented same to appellant for signature, and later wrote him a letter, requesting a statement of the partnership account, and, some time thereafter, in company with Mr. Rule, visited the office of appellant, for the purpose of obtaining a settlement.

When first upon the stand, the denial of appellant covered all of the conversations concerning the partnership agreement and the improvement and sale of the land to which the members of plaintiff firm had testified; but, on the following day, when recalled, he admitted that Blythe was in the abstract office on the occasion referred to by him, but denied that any conversation was had between them. He further testified that the first intimation he ever had that plaintiff claimed an interest in the land, or in the proceeds of the sale, was when the written contract was handed to him by Blythe. He further stated that he paid no attention to the contract, and made no response to plaintiff's letter asking for a settlement. Blythe also testified that it was agreed between himself and appellant, at the time the oral partnership agreement was made, that, when the transaction was closed, a written agreement embodying its terms would be prepared and signed by the parties; that, on the day the deal was closed with Rowland, which was about the middle of June, the instrument handed to appellant was prepared, with his knowledge and consent, and that he promised to figure up his

expenses and come to plaintiff's office and make a final account-. ing of the transaction, and receive plaintiff's check for the amount due. Rowland also corroborated the testimony of Blythe as to what occurred at the abstract office, except that he did not hear the conversation. According to the testimony of some of the members of plaintiff firm, appellant, upon one or more occasions, stated to them that he thought he had a purchaser for the land, who was willing to pay $125 per acre therefor, and asked their advice as to whether they had better sell or not, and repeatedly denied having sold the land. It appears, however, from the testimony of both defendants that, some time in March, 1916, appellant executed a deed conveying a one-half interest in the land to Bowles, for a consideration of $120 per acre; that Bowles,. who was in the real estate business, in April entered into a contract in writing with one Stewart in the name of appellant, for the sale of the land to him at $140 per acre, receiving $1,000 in cash on the purchase price, the balance, subject to a mortgage of $15,000 subsequently executed by Cummings, to be paid on March 1, 1917. In October, 1916, the deed from Cummings to Bowles, which had not been recorded, was returned to the former or destroyed, and a deed conveying the land to him absolutely was executed and properly placed of record. It is admitted, however, that it was intended thereby to convey only a one-half interest in the land.

We are constrained to hold that the clear preponderance of the evidence is in favor of the alleged partnership agreement; that the evidence was not incompetent under the statute of frauds; and that appellant should account to plaintiff for one half of the net proceeds of the sale of said land, unless the partnership contract was invalid and contrary to public policy, because of the admitted relation between plaintiff and Mrs. Osgood and the other parties to the transaction.

II. Clearly, the contract was not without consideration. By its terms, each party agreed to purchase the land, pay one half of the cost and expense of the transaction and of the im-

3. CONTRACTS: consideration: mutual covenants. provement and sale of the land, and to share the profits or losses equally. It is true that no part of the purchase price was in fact paid by plaintiff to appellant, but, according to the testimony, re-

peated tender and offer to pay the same was made, and the only reason it was not paid was that appellant requested time to prepare and render a final statement of the transaction when the deal was closed, in order that the whole amount might be paid at one time. Mutual covenants and promises of the parties are sufficient consideration for the contract. *Boies & Barrett v. Vincent,* 24 Iowa 387; *Nilles v. Welsh,* 89 Iowa 491; *Lahn v. Koep,* 139 Iowa 349; *Conkling v. Young,* 141 Iowa 676, 677; *Goodman Mfg. Co. v. Mammoth Vein Coal Co.,* 185 Iowa 253; *Holdridge v. McKewen,* 107 Ark. 368 (155 S. W. 113); 1 Elliott on Contracts, Section 484; 1 Bates on Law of Partnership, Section 2. The plaintiff co-operated with appellant in purchasing the land, at least to the extent of the information furnished him, and the procurement of the land from Mrs. Osgood.

III. It is conceded by plaintiff that, at all times covered by the transactions and conversations referred to in the testimony, it was employed to collect and remit the rents of the land, and to procure the admission of the Bailey will to probate in Iowa; that they did obtain the probate thereof, and paid the collateral inheritance tax and expenses on the farm for the owners thereof; that they procured the appointment of a guardian for some of appellant's grantors, who were minors, together with authority to execute guardian's deeds, and reported the sale and had deeds approved by the court; that they obtained the Osgood deed through Benner & Brown, and delivered it to plaintiff. Plaintiff contends, however, that appellant's grantors knew the firm's connection with the purchase of the land, and did not object thereto. Several members of plaintiff firm, and the stenographer at that time in its employ, testified that Mr. Blythe, in the presence of appellant, dictated a letter to Benner & Brown, after the receipt of the Osgood deed and before it was delivered, fully informing them of plaintiff's connection with the transaction, and offering to return the deed, if Mrs. Osgood objected to the consideration agreed upon, or the firm's connection therewith. A carbon copy of the letter was preserved by the stenographer, but neither the original nor the copy was produced at the trial. The original, if preserved, was

4. CONTRACTS: legality: voidability not presentable by third party.

presumably in the possession of Benner & Brown, or of Mrs. Osgood, and it is claimed by plaintiff that the copy was sent· by Mr. Blythe to Judge Smith, in Boston, for his information, together with a request that he call upon Benner & Brown and ascertain, if possible, whether Cummings had written to them concerning the land. Appellant denied that a letter to the effect stated was dictated in his presence,. or read to him from the shorthand notes of the stenographer, or that he ever heard of the transaction. Plaintiff, however, introduced what purported· to be a reply from Benner & Brown to a letter from plaintiff concerning the sale of the land, showing that they knew that Mrs. Osgood was receiving less for her 40 than were the Minnesota parties, but stating that she desired to complete the transfer, and made no objection to the possible connection of Mr. Blythe with the transaction. The reference to Mr. Blythe, instead of to the firm, is explained by the witnesses, who testified that the partnership negotiations were, for convenience, to be conducted on behalf of the firm in his name. While Rowland testified, in contradiction of Mr. Rule, that he did not know of plaintiff's claimed connection with the purchase before the deal was closed, he did later learn thereof, and so informed his clients, but that neither they nor he made any objection thereto. The agreement, at most, was voidable at the instance of plaintiff's clients, and, as it affirmatively appears of record that Mrs. Osgood was fully informed of plaintiff's interest in the matter before the transaction was closed, and that all of the parties are satisfied with the deal, appellant is not in a position, in a suit for an accounting by the other member of the partnership, to base a defense thereon. He has received the profits of the transaction carried on in his name for the benefit of the partnership, and cannot complain because plaintiff sustained some fiduciary relation to his vendors, who, with knowledge, apparently acquiesced therein. We said, in *Doyle v. Burns,* supra, that:

"When one of several joint parties to a contract has received the profits thereof, he cannot deny liability to his associates on the ground that the contract was voidable as to the other contracting party, in the absence of some question of public policy. There is a manifest distinction between the enforcement

of an illegal contract and the assertion of title to money or property which has arisen out of it."

No one, so far as the record disclosed, has sought to avoid the contract with appellant, or has raised any objection thereto. The partnership agreement was not illegal because in violation of a statute, but was, at most, voidable only. Our attention is called to numerous decisions of courts of other jurisdictions, holding to the rule stated in 9 Cyc. 559, that:

"A number of courts have refused to allow a recovery by a principal or partner in an illegal enterprise, on the ground that to do so would be to enforce, or at least to recognize, the illegal agreement."

But whether we follow the rule announced in *Doyle v. Burns,* supra, or the rule announced by the cases cited by counsel, we must, upon the record before us, arrive at the same conclusion.

IV.   The court, in computing the amount due plaintiff, allowed the defendant interest at 6 per cent on one half of the sums advanced by him, from the date of such advancement to June 15, 1916, the date on which the purchase was completed by the delivery of the deeds to appellant. The balance found to be due the partnership on that date was $10,555.05. To this amount is added interest at 6 per cent from June 15th to the date of the decree, amounting to $1,210.20, and also $429.70 rents, and $31 interest thereon, making the total due the partnership on said date, $12,225.95. The court rendered judgment against defendant for one half thereof.

Counsel for appellant contends that Bowles paid a lump sum of but $6,060 for a one-half interest in the land, whereas the court charged him on the basis of 120 acres, at $120 per acre. This was in accordance with the testimony. It is true that Bowles testified that, as he remembered it, he paid appellant $6,060 for a one-half interest in the land, but both testified that the agreed consideration was $120 per acre, as found by the court.

It is also claimed that the court failed to allow appellant all the interest to which he was entitled upon money advanced. A careful computation, however, satisfies us that the amount fixed by the court is practically right, and, in any event, could not

be varied more than a few dollars. According to the testimony of the members of plaintiff firm, they were ready, able, and willing, at all times, and frequently offered, to settle with defendant, but that he failed or refused to make settlement, or to receive their check for the amount due him.

In reaching the conclusion that the decree of the court below should be affirmed, we have examined and analyzed the record with great care; and, while we have omitted reference to much testimony and many circumstances throwing light upon the transaction, they, on the whole, but strengthen our conviction that defendant should be required to account to plaintiff as prayed. The evidence upon practically all material points is in sharp conflict, and cannot be harmonized. As it appears to us, the court could not properly have reached a different conclusion, and its judgment and decree are, therefore,—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.