GOODMAN MANUFACTURING COMPANY, Appellant, v. MAMMOTH VEIN COAL COMPANY et al., Appellees.

PRINCIPAL AND AGENT: Conduct as Showing Authority. Prima-facie authority of an agent is shown by evidence that his name appeared upon the principal's letterhead as assistant treasurer; that he acted in the contract matter in question ostensibly on behalf of the principal; that he had the subject-matter in question in his possession, just prior to the bringing of suit therein; and that he was present and active at the trial, ostensibly on behalf of the principal.

CONTRACTS: Extension of Time of Payment. Consideration for agreement to forbear, for a stated time, suit on a note, is shown when it appears that the maker obligated himself to incur, and did incur, added expense in carrying out the terms of the agreement.

CONTRACTS: Forbearing Suit on Note. The relinquishment, by the maker of a note, of a good-faith asserted claim of invalidity in the note, in return for an agreement by the payee to forbear suit on the note for a stated time, is supported by a sufficient consideration. So held where the invalidity was on the point that the president of a corporation executed the note without authority.

CORPORATIONS: Execution of Promissory Notes. Principle recognized that the position of *president* of a corporation does not, of itself, carry authority to execute the promissory notes of the

corporation, even though the president does hold practically all the corporate stock.

**EVIDENCE:** Subsequent and Independent Agreement. The rule that parol evidence is inadmissible to vary, etc., the terms of a valid written instrument, is not violated by evidence that, subsequent to the execution of a note, an independent oral agreement on a new consideration was entered into, under which the payee agreed to forbear suit for a named time, and agreed to accept payment in a manner different from that provided in the note.

**ABATEMENT AND REVIVAL:** Agreement to. Forbear Suit. Breach of a valid agreement by the maker of a note to forbear suit for a stated time, does not drive the payee to an action for damages consequent on the breach.

**CONTRACTS:** Indefinite Extensions of Time of Payment. A contract, though on adequate consideration, for an extension, *to an indefinite and uncertain date*, of the time of payment of a matured obligation is non-enforcible.

PRINCIPLE APPLIED: A coal mining corporation had, outstanding, a large bonded indebtedness, secured by mortgage. The mortgage required that ten cents on every ton of coal mined should be placed in a sinking fund, for the payment of said bonds and interest thereon as it matured. It seems that this had not been done, and that a deficit necessarily existed in said fund. In this condition, an action was brought against the corporation on a series of matured promissory notes, aggregating some $900. Evidently, the plaintiff made discovery that the bonds were prior in lien to his claim. An agreement was entered into, on sufficient consideration, under which agreement the suit was dismissed. The corporation (1) agreed to carry out its violated agreement in regard to said sinking fund,— that is, agreed to replace the accrued deficiency (the amount of which was then unknown),—and to meet the accruing sinking fund, *from said ten cents on each ton of coal mined*, and (2) agreed that, when the said fund was intact, it would, from its excess funds, commence to pay plaintiff at least $100 per month, and *as much* more as possible. Plaintiff agreed that it would forbear suit so long as the corporation kept said agreement.

*Held*, the agreement was not enforcible, inasmuch as the time when the notes could be paid off under this arrangement was wholly indefinite and uncertain.

**BILLS AND NOTES:** Indefinite Extension of Time of Payment. An agreement for an extension of time of payment of a matured

promissory note until the happening of a specified contingency may not, when the contingency is discovered to be wholly uncertain, be construed into an agreement for an extension "for a reasonable time."

*Appeal from Polk District Court.*—CHAS. A. DUDLEY, Judge.

SEPTEMBER 30, 1918.

REHEARING DENIED JANUARY 21, 1919.

ACTION on nine promissory notes, executed by the Mammoth Vein Coal Company, November 1, 1915, to the Goodman Manufacturing Company, and indorsed by J. A. J. Powers, aggregating $917.94, aided by garnishment proceedings. Defendants interposed a plea in abatement, and, by way of counterclaim, prayed for damages consequent on the wrongful suing out of the writ of attachment. The outcome was a judgment in abatement and on the counterclaim, and the assessment of attorney fees. The plaintiff appeals.—*Reversed.*

*E. D. Smith, George W. Brown,* and *J. W. White,* for appellant.

*McClelland & Powers* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

LADD, J.—I. Recovery in this action, begun July 3, 1916, is sought on nine of a series of eleven promissory notes for the aggregate sum of $917.94, with interest. These notes purported to have been executed to plaintiff by the Mammoth Vein Coal Company, and indorsed by defendant, Powers. A condition of each note was that, "in case of default in payment of any note of said series, all notes of the same series shall, at the option of said Goodman Manufacturing Company, become due and payable on the day following such default." The plaintiff, as well as the defendant Mammoth Vein Coal Company, was a cor-

poration, and no question is raised but that the several notes had become due. Plaintiff had sued thereon in February or March, 1916, but that action was dismissed, as defendants alleged in their answer, in pursuance of an oral agreement wherein plaintiff promised so to do.

"And not again sue upon the notes  *  *  *  so long as the defendants carried out the agreement that the sinking fund on the bonds of the Mammoth Vein Coal Company, which was then delinquent, and the sinking fund as it accrued, be first paid out of the net earnings of the Mammoth Vein Coal Company, to the trustee for the bondholders of the Mammoth Vein Coal Company, and when this payment was completed on the sinking fund, the defendants in this action were to commence the payment of not less than $100 per month to the plaintiff in this action upon their said notes, and to pay as much more as possible, taking into consideration the other creditors of the Mammoth Vein Coal Company, until the whole amount of plaintiff's claim was paid. These payments were to be made out of the moneys above the current and delinquent sinking fund. Defendants further state that it was orally agreed at said time that the defendant Mammoth Vein Coal Company should appoint and employ J. B. Weede as the person who would check up and pay any claims which were to be paid by the Mammoth Vein Coal Company, and in accordance with said agreement, the defendant Mammoth Vein Coal Company employed the said J. B. Weede for the purpose agreed upon, and ever since said time, the said J. B. Weede has performed said services for the Mammoth Vein Coal Company. It was further agreed by the defendants that the Mammoth Vein Coal Company would not make defense to said notes on the ground that they were issued without the consent of said corporation, or without any authority given by the managing powers or board of said company."

A counterclaim for the alleged wrongful suing out of a

writ of attachment also was pleaded. The plaintiff, in reply, averred that: (1) There was no consideration for the agreement; (2) said agreement might not be proven, for that it was not in writing, and not to be performed within one year; and (3) plaintiff never entered into such agreement, nor ratified or confirmed the same. Issue was joined on the counterclaim. The evidence of the representative of defendants that an oral agreement, such as alleged, was entered into by a representative of defendant with one Johnston, assistant to the treasurer of plaintiff company, is not controverted; but it is argued that the evidence was insufficient to show that Johnston was authorized to act for the company. It appears from the evidence that the representative of the defendant company called up the plaintiff's office by telephone, and that Johnston responded, ostensibly in behalf of the company, and arranged a meeting; that they met, in pursuance of such arrangement, and entered into an agreement in substance as pleaded by defendant company. Thereafter, Johnston, noted as assistant treasurer on plaintiff's letterhead, wrote to defendant's representative, advising him that the matter of adjustment had been turned over to its attorney, Smith, of Des Moines; and the suit was dismissed, precisely as agreed. Moreover, the evidence discloses that Johnston had these notes in possession, immediately prior to the bringing of the first suit, and sat at the trial table with plaintiff's counsel throughout the trial. Evidence of these facts was sufficient to carry the issue as to Johnston's authority to the jury.

1. PRINCIPAL AND AGENT: conduct as showing authority.

II. Appellant also contends that the oral agreement pleaded was without consideration. That a valuable consideration is essential to an agreement to extend the time of payment or to forbear bringing suit, cannot well be questioned. *Hensler v. Watts*, 113 Iowa 741; *Marshall Field Co. v. Oren*

2. CONTRACTS: extension of time of payment.

*Ruffcorn Co.*, 117 Iowa 157. See, also, note to *Lahn v. Koep*, 139 Iowa 349, in 52 L. R. A. (N. S.) 327. To constitute a consideration in such a case, there must be a benefit to the creditor: something must be secured to him which he could not otherwise demand, or there must be a detriment to the debtor. The latter must do or obligate himself to do something which, in the absence of an agreement, he would not be bound to do. *Harlan v. Harlan*, 102 Iowa 701; *Daily v. Minnick*, 117 Iowa 563.

Two considerations for this contract are pleaded. The first of these is that the defendant company would employ Weede to check up the pay roll, to ascertain the amount of coal and the proceeds derived from the sale thereof, and to see that 15 cents per ton of the coal mined be paid to the trustee, in pursuance of the provision of a trust agreement and supplemental trust agreement. This money was to go into a sinking fund, and the representative of the company suggested that enough would be paid about the first of October to meet the interest charges; and to that time, Weede had been employed.

Johnston replied that he (Weede) would then be discharged, and the company would slip back to its former method of doing business. The defendant's representative undertook to have the company engage Weede until the entire amount owing on the notes should be paid. Subsequently, the directors of the defendant company convened, and, on motion, resolved to commence "payment of the notes due the Goodman Manufacturing Company, of Chicago, and the note due Haw Hardware Company, of Ottumwa, just as soon as delinquent and current sinking fund is paid up, by paying the Goodman Manufacturing Company not less than $100 per month, and the Haw Hardware Company not less than $10 per month, and as much more as possible, until the whole amount of these claims are fully paid, these to be paid out of the moneys above the sinking fund."

The resolution then recites that it is on condition that the plaintiff withdraw its suit against defendant and dismiss same without prejudice, and that they accept the face of the notes, with interest, as their claim. Another resolution was passed, that:

"The agreement with J. B. Weede with reference to handling the pay rolls as fully set out in the additional trust agreement be continued until such time as the full amount owing Goodman Manufacturing Company notes are paid in full, and thereafter until further order of the board of directors."

Weede's compensation was then fixed at $12.50 per trip, in connection with taking the pay rolls to the mine.

Weede testified to going to the mines twice a month, since February 1, 1916, and performing the services in accordance with the employment by the corporation. The latter became obligated by the contract, evidenced by this resolution and Weede's acceptance, to continue Weede in its service, and pay him the stipulated compensation, until the plaintiff should be paid. This, under all the definitions, constituted a valuable consideration. True, Weede owned one share of stock, and was secretary; but in neither capacity was he required to do this work. He appears to have been a trustee in an additional trust agreement, not, however, requiring him to render such services. Moreover, such an agreement was to be made, and the plaintiff is not now in a situation to question the employment of the identical person agreed upon to render the services. We entertain no doubt that this afforded a valuable consideration for the forbearance to bring suit.

The other consideration pleaded was that the undertaking of the representative of the defendant company was the agreement that, if the time of payment were extended, or the plaintiff would forbear bringing suit, the defendant company would not interpose as a defense to the notes that they were is-

3. CONTRACTS:
   forbearing
   suit on note.

sued without the consent of said company or its board of directors. That such was the arrangement is undisputed. The evidence discloses that these notes were executed by the president of the defendant company, without consulting its directors, and without their acquiescence or consent. The authorities are without conflict that the president of a corporation has no such implied authority. This is so well established that citation of authorities is unnecessary; but see *Ney v. Eastern Iowa Tel. Co.*, 162 Iowa 525. The circumstance that the president may have owned nearly all the stock does not obviate this conclusion. The corporation was a distinct entity and under the control of its directors, and the president might not exercise the authority of executing promissory notes thereof on his own motion, or otherwise than as empowered in the articles or by-laws, or by the managing directors of the company. If he so did, as is alleged, without the consent, approval, or ratification of the directors, ostensibly or otherwise, the company is not bound thereby. If the defendant had such a defense, or it believed in good faith that such defense was available to it, and agreed to waive the same on a promise of the plaintiff to dismiss the suit then pending, and forbear bringing another for some time, then this was a valuable consideration. By waiving its right to interpose this defense, it undertook to desist from asserting a right which it otherwise might have done. This, under all of the definitions, was a valuable consideration for the promise on the part of the plaintiff. As remarked by Lord Justice Cotton, in *Miles v. New Zealand Alford Est. Co.*, 32 Ch. Div. 266:

4. CORPORA-
TIONS: execu-
tion of prom-
issory notes.

"If there is, in fact, a serious claim, honestly made, the abandonment of the claim is a good 'consideration' for a contract."

See *Cook v. Wright*, Q. B. 1 Best & Smith 559. In *Sisson v. Kaper*, 105 Iowa 599, this court held that waiver

of a right to rescind a contract on ground of fraud constitutes a sufficient consideration for a new contract. A settlement of a disputed claim, even if of doubtful validity, is supposed to be sufficient consideration. *Richardson & Boynton Co. v. Independent Dist.*, 70 Iowa 573. See *Smith v. C. R. & M. R. R. Co.*, 43 Iowa 239.

The evidence that the representative of the defendant company acted in good faith in asserting such defense, and that the company was relying thereon, even though there was some doubt as to whether the company had not ratified the execution of the notes by the president, was sufficient to carry that issue to the jury; and, as seen, if such defense existed, or if the defendant, through its representative, in good faith asserted its existence, the agreement to waive it in consideration of the forbearance to prosecute the suit against defendant company constituted a valuable consideration.

III. The appellant contends that the parol evidence of the agreement was incompetent, for that it tended to vary the terms of a written instrument. It does not have that effect. It merely tended to prove a subsequent independent agreement. As observed in *Cox v. Carrell & Co.*, 6 Iowa 350:

5. EVIDENCE: subsequent and independent agreement.

"A written contract may be affected in several ways, by parol agreement: for instance, it may be wholly set aside or abrogated; the particulars or details of its performance may be varied, as is often the case in building contracts; and the place of performance may be changed, and so the time may be. Parol evidence is competent to prove the enlargement of the time of performance, says Mr. Greenleaf, in 1 Greenl. Ev. 400, Section 304. The rule seems to be that parol evidence is admissible, if it is not proposed to show that a different contract was made, originally, from that expressed in the writing, but only to show that some subsequent arrangement was

entered into, in reference to the time, place or details of performance."

See, also, *Lahn v. Koep,* supra. Nothing in the authorities cited by the appellant obviates this conclusion. The original notes are the subject of the subsequent contract, which, though relating thereto, does not purport to change them.

IV. Appellant contends that, even though there was a consideration for the agreement to forbear bringing suit on the notes, this might not be pleaded in abatement, for that the remedy in event of a breach thereof

6. ABATEMENT AND REVIVAL: agreement to forbear suit.

would be by action for consequential damages. Decisions so holding may be found. but the rule is otherwise in this state. *Cox v. Carrell & Co.,* 6 Iowa 350; *Lahn v. Koep,* 139 Iowa 349; *Conkling v. Young,* 141 Iowa 676. *Houts v. Sioux City Brass Works,* 134 Iowa 484, is not in point.

V. The more difficult question to be determined is whether the oral agreement to forbear bringing suit was for a definite or certain period, or to a time certain. Unless so definite and certain, it is not en-

7. CONTRACTS: indefinite extensions of time of payment.

forcible. *Morgan v. Thompson,* 60 Iowa 280; *Davis v. Graham,* 29 Iowa 514. Such agreements must have all the essentials of a binding contract, reasonably definite as to time, and an agreed equivalent for the extension. See *Fanning v. Murphy,* 126 Wis. 538 (4 L. R. A. [N. S.] 666).

The point usually arises in defenses interposed by sureties, though not always; and, of course, the time of the extension must be as definite and certain, in order to obviate a plea in abatement in action on the note by the principal, as to release a surety when the alleged extension is asserted by the surety as a release of his obligation. The agreement alleged and proven was that plaintiff would "not sue upon the notes, so long as the defendants carried out the

agreement that the sinking fund on the bonds of the Mammoth Vein Coal Company, which was then delinquent, and the sinking fund as it accrued, be first paid out of the net earnings of the Mammoth Vein Coal Company, to the trustee for the bondholders of the Mammoth Vein Coal Company; and when this payment was completed on the sinking fund, the defendants in this action were to commence the payment of not less than $100 per month to the plaintiff in this action upon their said notes, and to pay as much more as possible, taking into consideration the other creditors of the Mammoth Vein Coal Company, until the whole amount of plaintiff's claim was paid. These payments were to be made out of the moneys above the current and delinquent sinking fund." Neither party to the agreement was then aware of the extent of the delinquency in the sinking fund, and it was utterly impossible for anyone to say when it would be met out of the 10 cents per ton of coal mined and sold which made up this fund; for interest on the outstanding bonds was to be paid therefrom as such interest accrued. The wages of miners and other expenses must have been paid, and, though these were to be met out of the proceeds of the coal as sold, they might prove insufficient, and resort to the 10 cents a ton prove necessary, as actually happened on one occasion. Moreover, no one could say in advance how much coal would be mined from day to day or month to month, or the difficulties which might arise in the operation of the mine. In fact, the readjustment of wages and consequent changes in prices of coal greatly interfered with coal production in April, following the making of the agreement, and the delinquency in the sinking fund increased during every month up to the time of trial. No one could say from the agreement, even in the light of the record of this trial, even approximately when the delinquency in the sinking fund would be overcome by the payment therein of 10 cents per ton on all coal mined, or when there would be

"moneys above the current and delinquent sinking fund" out of which to make payment on the notes. There is no escape from the conclusion that the period of extension or forbearance was indefinite and uncertain. See *Union Nat. Bank v. Cross*, 100 Wis. 174 (75 N. W. 992).

Appellee argues that, even were this true, the agreement must be construed as contemplating forbearance for a reasonable time. See *Hakes v. Hotchkiss*, 23 Vt. 231. The trouble with this is that the agreement was otherwise, and an arrangement to forbear until a contingency cannot be construed into something else: i. e., for a reasonable time. For all that then appears, the contingency might happen in much less than a reasonable time, or long thereafter.

8. BILLS AND NOTES: indefinite extension of time of payment.

We are of opinion that the court should have denied the plea in abatement, and have awarded recovery on the notes. —*Reversed*.

PRESTON, C. J., EVANS and SALINGER, JJ., concur.