M. M. Sheley, Appellant, v. Percy Engle et al., Appellees.

DEEDS: Construction—Reservation of Right to Repurchase—Effect. A
1   recital in a conveyance that the grantor "reserves the right to re-
purchase said premises under his contract with said grantee" does
not, in and of itself, show that said deed was intended as a mort-
gage.

MORTGAGES: Transfer of Property—Assumption of Mortgage—Con-
2   sideration—Pleading. When mortgaged premises have been con-
veyed and the grantee has agreed in the deed to pay the mortgage,
the foreclosing plaintiff may, under proper pleading, prove that such
agreement was because of a consideration which passed from himself
to said grantee. Held that an unquestioned allegation to the effect
that said agreement to pay was "as a part consideration of said
conveyance and of said transaction" was sufficient to justify such
proof.

DEEDS: Consideration—Assumption-of-mortgage Clause. A written
3   clause in a deed of conveyance to the effect that the grantee assumes
and agrees to pay an existing mortgage on the land does not import
a consideration.

MORTGAGES: Transfer of Property—Assumption of Mortgage—Consid-
4   eration. Consideration for an agreement by a subsequent grantee of
mortgaged premises to pay the mortgage is found in the fact that
such agreement is the result of a settlement of the good-faith con-
tention of the mortgagee that said grantee had, by the modification
of a deed, wrongfully obliterated all evidence that the mortgagor
ever had any interest in the land, to the damage of said mortgagee.
(See Book of Anno., Vol. 1, Sec. 9441, Anno. 68 et seq.)

BANKS AND BANKING: Powers—Assumption of Mortgage. A bank,
5., as grantee in a deed of conveyance, may validly assume and agree
to pay an existing mortgage on the land, it appearing that the
board of directors had, with full knowledge of all the facts, for-
mally authorized the receipt of such deed.

BANKS AND BANKING: Powers—Assumption of Mortgage—Authori-
6   zation—Construction. The action of the directors of a bank in
authorizing the receipt by the bank of a deed "as additional
security" does not have the effect of overcoming the effect of a
clause in the deed whereby grantee assumed and agreed to pay an
existing mortgage on the land, when such clause was inserted in the
deed as the result of a valid agreement between the bank and the
mortgagor, of which the directors had full knowledge.

Headnote 1: 41 C. J. p. 326. Headnote 2: 42 C. J. p. 107. Headnote 3: 41 C. J. p. 727 (Anno.) Headnote 4: 41 C. J. p. 727 (Anno.) Headnote 5: 7 C. J. p. 589 (Anno.) Headnote 6: 7 C. J. p. 589 (Anno.)

*Appeal from Poweshiek District Court.*—CHARLES A. DEWEY, Judge.

MAY 3, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Action in equity, for the foreclosure of a real estate mortgage. The plaintiff prayed personal judgment against the Citizens State Bank, which was denied; and it is from this portion of the decree alone that the appeal is prosecuted.—*Reversed.*

*McCoy & McCoy,* for appellant.

*M. R. Hammer, Bechly & McNeil,* and *Korf & Korf,* for appellees.

FAVILLE, J.—The appellant originally owned the land involved in this action. He sold said premises to the appellee Percy Engle. He executed a deed conveying said premises to Engle on the 26th day of February, 1920. On March 1, 1920, Engle and wife executed and delivered to the appellant a mortgage on said described premises, representing a portion of the purchase price. Said mortgage was subject to a first mortgage on said premises of $10,000, and was given to secure the sum of $12,765. The deed from appellant to Engle was not recorded at or about the time it was given. Before it was recorded, the name of Engle as grantee in said deed was erased, and the name of the appellee Citizens State Bank of Newton, Iowa, was inserted in said deed as grantee. Subsequently, the appellant discovered that the deed from appellant to Engle had been changed before it was recorded, and that there was no record of title to said premises in the mortgagor, Engle. Thereupon, an arrangement was entered into, the details of which will be discussed later, whereby the bank conveyed said premises to Engle, and Engle reconveyed said premises to appellee bank. Said last-named deed recites that the deeded premises are conveyed "subject to

the second mortgage on said premises by said Percy Engle to M. M. Sheley in the sum of $12,765; which mortgages, together with interest thereon from March 1, 1920, the grantee herein assumes and agrees to pay as part of the purchase price of said premises." The said deed also recites: .

"This deed is made for the purpose of correcting and perfecting the title in said grantee. Grantor Percy Engle reserves his right to repurchase said premises under his contract with said grantee."

Two years later, said Citizens State Bank conveyed said premises to the appellee Sayre by warranty deed, subject to the outstanding mortgages thereon. The appellant seeks personal judgment against the Citizens State Bank upon the recitals of assumption of said mortgage in the deed from Engle to said bank.

Regarding the transaction at the time the deed in question arose, it appears from the record that appellant discovered that the deed which he had executed and delivered to Engle had been changed before it was placed of record, and that the appellee bank had been substituted as grantee therein. It therefore appeared that he held a mortgage on the premises that had been executed by one who held no title thereto. Thereupon, he and his attorney went to Newton, to interview the officers of said bank. It was insisted by appellant or his attorney that the directors of the bank should adopt proper resolutions in regard to the matter. The deeds were made accordingly; the board of directors of the bank met, and adopted a resolution reciting that the deed from said bank to Engle was ratified and approved. The minutes also recited that at said time a motion was made and carried by the directors "that the said Citizens State Bank receive and accept as additional security from Percy Engle the deed by himself and wife conveying said premises to the said bank, the same being dated and delivered to said bank this February 23, 1921." Both deeds were placed of record shortly thereafter. The bank paid appellant and his attorney, for expenses in connection with fixing up the deed, the sum of $110; besides paying the recording fees in connection with the matter. There is no denial of the foregoing evidence. Both Engle and Sayre were witnesses, but neither testified that there was in fact any contract or agreement between appellee

and Engle for a reconveyance of the premises, or that·the deed· ·was held by·the bank as security.· It is to be noticed that appel-lee bank subsequently conveyed the premises by warranty deed to Sayre.

I. It is contended by the appellee that the deed from Engle to appellee; executed under the circumstances shown by the record, was what is termed by the appellee an "equitable mort-gage;" that ·it· did not pass ··the full legal title to the appellee bank, and was merely given as security. The· difficulty ·with this con-tention of· the appellee's is that the record no-where shows that said deed was conveyed to. the bank·merely as· security. ·There is· a recital in· the· deed· to the effect ·that the grantor Engle "reserves his right to repurchase said premises under his contract with the said grantee." This of itself does not· constitute the instrument a mortgage, nor operate as a de-feasance clause· therein. . Whether·or· not such a contract existed· is ·not shown by· the evidence, and if such a contract did· exist, its terms and provisions are not shown. If Engle had a contract from the· appellee providing for· the re-purchase of the· premises,: it would still require a construction of· said instrument to deter-mine whether·or not, under ·all the ·facts · and ·· circumstances shown, the instrument, although in form·a deed, was a mortgage. The fact of ·the subsequent transfer· of the property· by· the appellee ·by a full warranty deed is of consequence as indicating the construction .placed upon the· transaction ·by the appellee itself. Upon the record as made; we are constrained· to hold at this point that the instrument in question was not shown' to be . other· or different than what it purported to be : to ·wit, a deed· conveying. the· legal title to the premises in question to the ap-pellee. ···

1. DEEDS: con-struction: reser-vation of right to repurchase: effect.

II. ·It' is urged that the assumption clause in the deed in question was without any consideration, either moving from the grantor Engle to the grantee, or moving from the appellant· to· the grantee. ··· · ·

· · We had a somewhat similar question before·us in· the. recent case of *Snyder v. Sargeant*, 197 Iowa 475. · We therein said : ·

. · "The assumption· contract upon which plaintiffs sue is· in· writing, but it· is not signed by· the defendant. Of course, his· acceptance· of the deed containing ·the agreement established his

2. MORTGAGES:
transfer of
property: as-
sumption of
mortgage: con-
sideration:
pleading.

assent to it—supplied the element of mutuality essential to its validity as a contract; but, equally of course, it did not supply the other essential, of consideration."

Regarding the matter of whether or not the instrument's being in writing imports a consideration, we said in the *Snyder* case:

"Did the assumption contract, unsigned by defendant, import a consideration as to him? The statute supplies the answer. At common law, all contracts not under seal required a consideration, while in respect to those under seal, a consideration was conclusively presumed. Upon the abolition of the use of private seals by statute in this state, somewhat of the quality that their use theretofore had imparted to contracts was, by statute, extended to contracts in writing, signed by the party to be bound. In contracts so evidenced, a consideration was imported. But it was only to those contracts coming within the terms of the statute that the attribute was given. As to all others proof of a consideration was still essential."

Applying this rule to the facts of the instant case, we think it must be held that the acceptance of the deed by the appellee bank does not of itself import a consideration for the assumption clause contained in said deed; and also,

3. DEEDS: consid-
eration: assump-
tion-of-mortgage
clause.

there is no proof in the record of the fact that any consideration for said assumption clause moved from the grantor Engle to the grantee bank. It is appellant's contention, however, that there was a consideration for said assumption clause in said deed moving from the appellant to the appellee bank, and that this arose out of the entire transaction and arrangement between the parties.

We first meet the question of pleading, and the allegation of the petition in this regard is as follows:

"That, on February 23, 1921, the defendants Engle sold and conveyed said premises to the Citizens State Bank of Newton, Iowa, as more fully appears at Volume 151, page 322, of said deed records, in which deed said bank, as a part consideration of said conveyance and of said transaction, assumed and agreed to pay the mortgage herein sued upon, together with interest thereon from March 1, 1920, a copy of which deed is as follows:"

In the *Snyder* case we said:

"It is said in argument that there was a consideration for the assumption in the good-faith dispute, the threatened litigation, and its final settlement. No such consideration was pleaded, nor was the question raised in the court below, and we do not pass upon the proposition."

Two questions confront us here. Is the allegation sufficient to raise the question of consideration for the assumption clause in the deed moving from appellant to appellee? The second question is whether, if the allegation is sufficient, the evidence is sufficient to sustain a finding of consideration for said assumption. The only allegation in the petition on the question of consideration is the above quotation.

The answer of the appellee pleaded as an affirmative defense that there was no consideration for any agreement or undertaking to assume or agree to pay the notes and mortgages declared in plaintiff's petition. There was no motion for a more specific statement, attacking the petition. We are disposed to hold, although not without hesitation, that, under the situation, the allegation that, "as a part of said conveyance *and of said transaction*," appellee assumed and agreed to pay the mortgage sued upon, and the absence of any challenge thereto, were sufficient to permit the appellant to establish, under said allegation, the fact, if it be a fact, that a consideration moved from the appellant to the appellee for the assumption by the appellee of the appellant's mortgage.

The record in the case is without dispute or conflict at this point. It appears that R. W. Sayre was president, and W. M. Sayre was cashier, of the appellee bank. As to what transpired at the time the deed in question was executed, and in relation to the "transaction," we quote from the record. The evidence in behalf of the appellant regarding the transaction at the time the deed in question was made, shows that the appellant and his attorney visited the bank of appellee, and there had a conversation with the cashier of the bank. The testimony shows that, at the time, the cashier said:

4. MORTGAGES: transfer of property: assumption of mortgage: consideration.

"Mr. Sayre said: 'Engle has been owing us, and we had this change made, instead of making out a new deed and having

a recording fee and revenue stamps to pay additional. We took this deed instead of another deed from him to us.' "

The evidence also shows that, at that time, the president and cashier of the bank said:

"They said: 'Percy Engle has been owing us, and we took this deed to square ourselves with him, instead of taking a new deed from him.' "

The evidence also shows, with reference to the conversation with the cashier of appellee at the time, that he "'followed up his question of 'what are you going to do about it?' by saying that the title was theirs, and if we wanted to look to anybody, we could look to Percy Engle; that they didn't have any contract or any dealing with us. And at that time, I said, in substance: 'We are not up here looking for trouble. If you will fix this up, if you will deed this property back, as I have suggested here, and your bank will assume and agree to pay these mortgages and pay our expenses, it will be all right. And in answer to his question, 'What are you going to do about it if we don't?' I said: 'We have no alternative, then, than to bring suit against your bank here for damages and for the foreclosure of this mortgage, and we have the original notice and the papers here, if you force us to use them. We are not here to use these if we can compromise and settle this thing any other way, but we want it fully and finally settled.' "

The witness also testified:

"Q. I believe you said that you stated to the Citizens State Bank, through Mr. Sayre, that Mr. Sheley was asking that this matter be fixed up by them, by deeding back to Engle, and Engle deeding back to the bank, and the bank assuming and agreeing to pay both the mortgage indebtedness which included Mr. Sheley's mortgage. When you made that statement, as you have stated here, what, if anything, did Mr. Sayre say to you they would do, if anything? A. They said they would do that."

The witness also testified:

"The bank officers and Mr. Engle asked what we wanted done, and I said, 'We want the bank first to deed these premises back to Mr. Engle, as of March 1, 1920, that being the date of the mortgage in suit, in order to form a basis of title for the mortgage from Percy Engle to Sheley.' The bank officers said, 'We are not going to deed away our property.' To this I said,

'Then have Mr. Engle thereafter deed back to the Citizens State Bank, assuming and agreeing to pay the mortgage which was in the deed which was already on record in the name of the Citizens State Bank, and including the mortgage of Engle to Sheley.' They said they would do that,—Sayres and Engle. I said: 'Now; gentlemen, as I understand it, the Citizens State Bank is a corporation,—is that true?' They said it was. I said, 'That being so, we will want you to call a meeting of the directors, so that there will be proper resolutions made which will justify your deeding to Engle and of your taking a deed back from Engle and assuming these mortgages.' I said: 'Get your own attorney, whoever he is, and prepare these deeds. If they are all right, we will O. K. them.' Mr. W. M. Sayre said: 'There is no need of that. You just prepare them yourself, and it will be all right with us. Now just go back to the back room there and fix up the deeds and resolutions, and we will get things fixed up all right.' Mr. Sheley and I went into the back room there,— one of the back rooms of the bank,—and the older Mr. Sayre (R. W. Sayre, the father of W. M. Sayre,) followed us back, and said: 'Gentlemen, I don't know a thing about this erasure, but I assure you we want to fix this up all right. We have tried to square things up with Percy Engle,—he owed us,—and the boys have taken this deed, instead of making a new deed. We want this fixed up right.' He said: 'You are welcome to have one of the girls here, a stenographer, to dictate to; and you fix this up, and I assure you we want to fix it up all right. We have already stood behind Engle on this, and we are willing to assume the payment of those mortgages.' "

The witness also testified:

"The bank said that they claimed the land; that Percy Engle was owing them, and they took a deed from Percy, and they claimed the land. Smith told them that they would have to go to work and make Percy Engle a deed, and then let Percy deed it back to them, and they would have to get behind this mortgage,—assume and agree to pay this mortgage. The Sayres said they wanted it straightened up so it would be all right and have no more trouble about it, and they said they would do it."

The appellant, as a witness, after testifying to the other transactions at Newton, said that he did not bring suit, "because

the bank took a deed to the land and agreed to assume the two mortgages.''

It also appeared from the evidence that the interest on the appellant's mortgage was paid by a check or draft sent to the appellant from the appellee. The appellee bank offered no evidence in dispute of the transaction as claimed by appellant.

Upon this undisputed record, it appears that, at the time of the transaction in question, as a part of which the deed in controversy was executed, the appellant was threatening suit against the appellee, and was insisting that the title to the real estate, which then apparently stood in the appellee and deprived the appellant of any apparent lien under his mortgage, must be so adjusted that his mortgage would properly appear of record. He was accusing the bank of impropriety in erasing Engle's name from the original deed and in taking the legal title to the premises in the bank; under appellant's deed to Engle. Appellant and his attorney evidently believed in good faith that appellant had a right of action at said time, and appellant was threatening to institute such action because of the manner in which the title to the land had passed, by virtue of the erasure and substitution in the original deed. If appellant and his attorney are to be believed,—and there is no evidence whatever to the contrary,—as a part of the transaction, at the time, between appellant and appellee, it was agreed that the appellant should forego suit against appellee, on condition that the appellee would cause the title to be reconveyed to Engle, and that the latter would then reconvey to appellee by deed, in which the appellee would assume and agree to pay the appellant's mortgage, and that the appellee would pay the expenses and attorney's fees in connection with the completion of the transaction. It is too well established to require citation of authority that the settlement or compromise of a claim will be sufficient consideration to support a promise of the kind in question. We discussed this question at length in the recent case of *Partello v. White,* 197 Iowa 24. Even though the appellant's claim may have been of doubtful legal validity, there is no question raised that it was not being asserted in good faith at the time. In the *Partello* case, we said: ''There is no purpose to doubt the familiar rule that the compromise of an illegal demand, or one founded on an unlawful consideration, or one wholly unfounded, and tainted with bad

·faith, cannot be enforced. But the doctrine that, in order to recover upon or enforce an agreement of compromise, it is not necessary that the validity of the original claim be shown, is well settled by authority. *Goodman v. Coal Co.,* supra [185 Iowa 253] ; *Adams v. Morton,* supra [37 Iowa 255] ; *Smith v. C. R. & M. R. R. Co.,* supra [43 Iowa 239] ; *Jewett Lbr. Co. v. Conroy Co.,* supra [171 Iowa 513] ; *Cantonwine v. Bosch Bros.,* supra [148 Iowa 496] ; *Brown v. Jennett,* 130 Iowa 311; *French v. French,* 84 Iowa 655; *Keefe v. Vogle,* 36 Iowa 87; *Galusha v. Sherman,* 105 Wis. 263; *Dunham v. Griswold,* 100 N. Y. 224; *Hennessy v. Bacon,* 137 U. S. 78 (34 L. Ed. 605) ; *White v. Hoyt,* 73 N. Y. 505; *Neibles v. Minneapolis & St. L. R. Co.,* 37 Minn. 151; *DeMars v. Musser-Sauntry L. L. & M. Co.,* 37 Minn. 418; *Perkins v. Trinka,* 30 Minn. 241; *Hall v. Wheeler,* 37 Minn. 522; *Connor v. Etheridge* (Neb.), 92 N. W. 135; *Bement v. May,* 135 Ind. 664; *Dunbar v. Dunbar,* 180 Mass. 170; *Adams v. Crown Coal Co.,* 198 Ill. 445; *Armijo v. Henry,* 14 N. M. 181 (25 L. R. A. [N. S.] 275), and cases cited in note. Briefly stated, the conclusion ·is that the compromise of a doubtful right asserted in good faith is a sufficient consideration for a promise, and it is not material on which side the right is ultimately found to lie.''

At this point, we are disposed to hold that the entire record of the transaction involving the appellant, the appellee, and Engle, by which the deed in controversy was executed, as shown by the undisputed evidence, discloses a consideration from appellant to appellee which will support the assumption clause in the deed in question.

III. It is contended by the appellee that, inasmuch as the appellee is a state bank, organized under the laws of this state, the act of the bank in assuming and agreeing to pay the appellant's

5. BANKS AND BANKING: powers: assumption of mortgage.

mortgage was *ultra vires,* and cannot be enforced against the appellee. Section 9222, Code of 1924, is as follows:

''State and savings banks may contract indebtedness or liability for the following purposes only: for necessary expenses in managing and transacting their business, for deposits, ·and to pay depositors; provided that in pursuance to an order ·of the board of directors previously adopted, other liabilities not in excess of amount equal to the capital stock may be in- ·curred.''

It is contended by the appellee that, under this section, the appellee could not legally enter into a contract of indebtedness or incur any liability by assumption of appellant's mortgage, and that the attempt to do so was within the express provisions of the statute.

It is to be observed that the limitations of the statute are very narrow, with respect to the power of state banks to contract indebtedness or incur liability. They can generally only do so, under the statute, "for necessary expenses in managing and transacting their business, for deposits, and to pay depositors." There is, however, one exceptional provision in the statute, and that is that, "in pursuance to an order of the board of directors previously adopted, other liabilities not in excess of amount equal to the capital stock may be incurred." The assumption clause in question must come under this latter provision, if at all; otherwise it is within the express prohibition of the statute. If the assumption clause is available for the benefit of the appellant, it must be because it is a contract for liability incurred by the bank "in pursuance to an order of the board of directors previously adopted." We go, then, to the record, to ascertain whether there was any such order of the board of directors. The minutes of the meeting of the board in respect to said matter were offered in evidence, and are as follows:

"Newton, Iowa, February 23, 1921.

"Called meeting of the board of directors of the Citizens State Bank, Newton, Iowa, held in the bank's office on the above date at 10:30 o'clock A. M., with the following members present and voting in the affirmative: R. W. Sayre, W. M. Sayre, and Elmer C. Pickens. Moved by Pickens, seconded by W. M. Sayre, that the warranty deed heretofore made, and dated March 1, 1920, by the said Citizens State Bank to Percy Engle of Newton, Iowa, conveying the SW¼ of the NW¼ and NW¼ of the SW¼ and the North 23 acres of the SW¼ of the SW¼, all in Section 22, Township 78 North, Range 15 West of the Fifth P. M., Poweshiek County, Iowa, be and the same is hereby ratified and approved."

And also the following from said minutes:

"Moved by Pickens, seconded by W. M. Sayre, that the said Citizens State Bank receive and accept as additional security from said Percy Engle the deed by himself and wife convey-

ing said premises to said bank, the same being dated and delivered to said bank this February 23, 1921, and cause the same to be immediately filed for record with the county recorder at Montezuma, Iowa. Signed R. W. Sayre, Chairman, and E. C. Pickens, Secretary.''

The record shows that appellant's counsel, at the time of the transaction, required that the board of directors approve of the transaction and of the deed. The board of directors was brought together for said purpose, and did so act. While the order of the board was not strictly ''previously adopted'' to the signing of the deed, it is apparent that the transaction was, in effect, all done simultaneously. The deed from the bank to Engle was executed, and the bank was authorized by the action of the board of directors to ''receive and accept as additional security from Percy Engle the deed by himself and wife conveying said premises to said bank.'' The point is strongly pressed that the minutes of the board of directors disclose that the bank was authorized to receive and accept the deed from Percy Engle ''as additional security.'' The resolution does not in terms authorize the bank to incur this indebtedness, except as it authorizes the bank to receive and accept the deed, which by its specific terms contained the assumption clause. The question is whether this recital in the minutes of the board of directors is sufficient to overcome the express recitals in the deed to the effect that the grantee bank agreed therein to assume and pay the appellant's mortgage. It is to be remembered that the question at this point does not arise between Engle and the bank. The appellant's contention is that the contract for assumption, while expressed in the deed from Engle to the bank, was, as a matter of fact, a part of a consideration moving from the appellant to the bank, and was not a contract made by Engle with the bank for the benefit of the appellant. Appellant is suing on his own contract, not on Engle's contract; and, as we have seen, there was evidence to sustain the finding that there was such an independent contract made between the appellant and the bank, based upon a consideration, and that said contract was expressed in the deed from Engle to the bank. Under these circumstances, we do not think that the recital in the

6. BANKS AND BANKING: powers: assumption of mortgage: authorization: construction. minutes of the meeting of the board of directors of the bank that the deed was accepted "as additional security" from Engle, is sufficient to defeat the appellant's right to recovery under the assumption clause in said deed. It is argued that a bank is not authorized to acquire real estate by deed except for certain limited purposes, and that, therefore, the act in question is *ultra vires.* The question at this point is not whether the act of the bank in acquiring real estate was *ultra vires,* so that proper parties in interest could question the same. The question that concerns our inquiry is whether the act of the bank in assuming and agreeing to pay the appellant's mortgage, based as it was, under the evidence, upon an independent contract with the appellant, resting on a consideration, was such a contract as came within the provisions of the statute; and we think that it must be held that, where such contract was authorized by the board of directors at the time, the bank was empowered by virtue of the statute to incur such indebtedness. Such a contract, incurring indebtedness to appellant, could have been made by the bank without any reference to a conveyance of real estate.

It is to be remembered that we are limiting this decision solely to the question of the rights of the appellant under the contract claimed by him between him and the bank, which was authorized by the action of the bank, and which resulted in the assumption by the bank, pursuant to such contract, of the payment of appellant's mortgage. This is the only contract involved here.

Upon the entire case, we are constrained to differ from the conclusion of the trial court, and to hold that the appellant was entitled to personal judgment against the appellee bank for the amount due on the mortgage. The decree of the trial court to the extent of denying such personal judgment against the appellee must be, and therefore it is,—*Reversed.*

STEVENS, VERMILION, and ALBERT, JJ., concur.

MORLING and KINDIG, JJ., specially concur.

EVANS, C. J., and DE GRAFF, J., dissent.

MORLING, J. (specially concurring.)—While the alteration

in the deed did not divest the estate of Engle, which was vested in him by the operation of the instrument at the time of its delivery (*Hollingsworth v. Holbrook*, 80 Iowa 151; 2 Corpus Juris 1185), and while, as to Engle and the bank, and all claiming through them, there might be an estoppel to deny transmission of title to the bank, the alteration rendered the recording of plaintiff's mortgage ineffectual as notice. The alteration was fraudulent as to plaintiff. Plaintiff had a cause of action therefor against the bank. The plaintiff and the bank made between themselves a settlement. As a part of the settlement, the bank agreed to pay plaintiff's mortgage. The bank's covenant was not to its debtor, to pay his debt to another, and therefore without consideration (*Guarantee Mtg. & Fin. Co. v. Cox*, 201 Iowa 598), but was to its own creditor (to one to whom it was under obligation to make reparation). The covenant in the deed from Engle to the bank to assume the mortgage was made as a part of the settlement, and as one of the terms thereof. By the agreement of settlement the bank got, and still retains, title good as against the plaintiff, to land to which its title was previously defective. I see no proposition of law or fact on which to rest any of the defenses pleaded. Besides, the only evidence that the bank's position under the deed was that of mortgagee is in the use of the words "additional security" in the resolution; but the use of those words does not necessarily overcome the other evidence, which shows that the bank was a grantee and owner, not merely a mortgagee, and that Engle had the right of repurchase. *Bradford v. Helsell*, 150 Iowa 732.

KINDIG, J., joins in this special concurrence.