**Wendell O. ANDERSON et al.,**
**Appellants,**

v.

**CIBA–GEIGY CORPORATION,**
**Appellee.**

**No. 73–1266.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1973.

Decided Jan. 9, 1974.

Stephen F. Avery, Spencer, Iowa, for appellants.

David J. Blair, Sioux City, Iowa, for appellee.

Before LAY, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Plaintiff-appellant Wendell O. Anderson, his wife, his brother, and his brother's wife filed a petition in an Iowa district court seeking $10,228.00 consequential damages from the Ciba-Geigy Corporation after Preforan 15G, a granular preemergence weed control agent produced by Ciba-Geigy, failed in fact to control the growth of weeds on the Andersons' soybean farm.[1] Ciba-Geigy thereafter removed the action to the United States District Court for the Northern District of Iowa, as one over which that court had original jurisdiction under 28 U.S.C. § 1332.[2] It was undisputed that the federal court would apply Iowa law.

The Andersons invoked three theories of liability: strict products liability, express warranty, and implied warranty of merchantability. Ciba-Geigy asserted as an affirmative defense the release or settlement agreement which it had entered into with Wendell Anderson on September 10, 1971. By stipulation, the issue of the validity of this release was separately tried without a jury to the District Court, Honorable Edward J. McManus, Chief Judge. *See* Fed.R.Civ.P. 39(a), 42(b). Judge McManus upheld federal jurisdiction under 28 U.S.C. § 1332, decided that the release was both valid and binding, and ordered the damages action dismissed on its merits.

The Andersons appeal, asking this court to hold that the release was invalid because unsupported by consideration or, alternatively, because negotiated by parties mutually mistaken with respect to a

---

1. The recovery sought included damages for loss of yield in the Andersons' soybean harvest, the expense of cleaning the weeds from the beans, damage to the Andersons' weed program for future years, and wear and tear on their combine, plus gasoline and labor costs.

2. The Andersons were all citizens and residents of Iowa; Ciba-Geigy was a New York corporation with its principal place of business in New York. The matter in controversy exceeded the sum of $10,000, exclusive of interests and costs.

material fact.[3] We affirm the District Court's disposition of the case. In so doing, we first briefly restate the factual setting within which the release was executed.

In May, 1971, Wendell Anderson and his brother, Deane, who helped Wendell farm 480 acres of land in Iowa, shared the cost of 1450 pounds of Preforan 15G which they purchased from the Farmers Co-operative Association of Marathon, Iowa, and applied approximately 1150 or 1200 pounds of the herbicide to 100 acres of the farm. Wendell provided his own application of the product and did so according to the directions on the label. During the 1971 growing season, Wendell and Deane became aware of a weed control problem in their soybeans. Wendell contacted Mr. Lester (Lars) Petty, agricultural representative of the Farmers Co-operative Association, who advised Anderson that he would contact the Ciba-Geigy Corporation.

Soon thereafter, Petty visited the Anderson farm with a Mr. Waldo from the Ciba-Geigy Corporation, who acknowledged a weed control problem. On August 11, 1971, a Mr. Billy Lee Harrison of Ciba-Geigy brought a report form to the Anderson farm. Harrison refused to inspect the soybean crop, but orally informed Wendell Anderson that he might provide a substitute herbicide for the Preforan 15G. When Anderson said that he was not interested in another herbicide, Harrison advised him that a company official had said that this was the best that the corporation could offer. Anderson testified that Harrison had advised him that company officials had said there would be no money settlements. On the basis of this information, Harrison had Wendell Anderson complete the report form.

On August 27, 1971, Ciba-Geigy sent Anderson a written offer to settle his claim by providing an amount of liquid Preforan 3EC equal to the value of Preforan 15G previously furnished, plus a cash allowance for its application in 1972. Anderson consulted Petty, who informed him that the Farmers Co-operative had not yet successfully negotiated a money settlement with Ciba-Geigy. Petty recommended that Anderson sign the release and that he include a statement thereon to the effect that he was dissatisfied with the nature of the settlement. Anderson so completed the release form, adding that he was "not happy with this settlement," but misplaced it in his desk. Anderson later found the form in his desk and returned it, after having been assured once more by Mr. Petty that the company's proposal was the only settlement available. Ciba-Geigy thereafter performed its obligation under the settlement agreement.

For the 1971 growing season approximately 2700 complaints were made concerning the product Preforan 15G. While approximately 1800 of these were handled in a manner similar to the settlement offered to Anderson, about 300 resulted in negotiations for cash settlements. At the time of the trial, the corporation had recieved no response to its offer to settle approximately 500 of the complaints.

*I. Consideration*

Appellants construe the release as a promise to perform a pre-existing legal duty and, therefore, as invalid for want of valuable consideration. They argue that upon their initial purchase of Preforan 15G they were promised weed control and that Ciba-Geigy's subsequent agreement to give them another herbi-

3. During oral argument before this court on October 18, 1973, counsel for the appellants noted that there are 61 similar cases pending in which Ciba-Geigy has affirmatively pleaded the execution of a release. Only four were removed to federal court because the remainder did not meet the jurisdictional amount requirement. 28 U.S.C. § 1332. The appellants see this appeal as a "test case" for challenging such releases, which have heretofore prevented any of these plaintiffs from litigating the merits of their damages claims.

cide plus an allowance for its application placed the corporation under no additional legal obligation.[4] We disagree.

■ Under applicable principles of common law, [5] it is well settled that "an agreement which compromises a bona fide dispute concerning duties and obligations under a subsisting contract, is supported by valid consideration and is enforceable." Pittsburg Testing Laboratory v. Farnsworth and Chambers Co., 251 F.2d 77, 79 (10th Cir. 1958). *See also* White v. Flood, 258 Iowa 402, 138 N.W.2d 863 (1965); Blunk v. Kuyper, 241 Iowa 1138, 44 N.W.2d 651 (1950); Kellogg v. Iowa State Traveling Men's Ass'n., 239 Iowa 196, 29 N.W.2d 559 (1947); Messer v. Washington National Insurance Co., 233 Iowa 1372, 11 N.W.2d 727 (1943); Munn v. Town of Drakesville, 226 Iowa 1040, 285 N.W. 644 (1939); Vande Stouwe v. Bankers' Life Co., 218 Iowa 1182, 254 N.W. 790 (1934); Love v. City of Des Moines, 210 Iowa 90, 230 N.W. 373 (1930); Sheley v. Engle, 204 Iowa 1283, 213 N.W. 617 (1927); Partello v. White, 197 Iowa 24, 196 N.W.719 (1924).

■ In this case, the parties disputed Ciba-Geigy's liability for consequential damages under the warranty which accompanied the initial purchase of the Preforan 15G.[6] Anderson repeatedly informed Ciba-Geigy representatives that he was dissatisfied with the herbicide's performance and that he wished to negotiate a cash settlement therefor. At no time prior to the execution of the release, did Ciba-Geigy admit any liability. In its letter of August 27, 1971, Ciba-Geigy offered the product replacement and cash allowance only as "goodwill consideration"; the release form which the corporation provided and which Anderson signed expressly stated that it was "a compromise of a disputed claim and that the making of this settlement [was] not an admission of liability on the part of CIBA Corporation or its successor, CIBA–GEIGY Corporation."

Under these circumstances, we sustain the factual findings of Judge McManus as not clearly erroneous, and we hold that there was sufficient consideration to support his legal conclusion that the release was valid.

## II. Mutual Mistake

Appellants seek to have the release set aside as a contract premised upon a mutual mistake of material fact, *i. e.*, that neither Anderson nor the corporate rep-

4. Ciba-Geigy, on the other hand, contends that the warranty on the Preforan 15G merely promised conformity with the herbicide's chemical description. *See* note 6 *infra*.

5. Iowa has adopted the Uniform Commercial Code, which would ordinarily control the issue appellants have raised here. *See* Iowa Stat.Ann. § 554.1107:

> Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party.

During the oral argument before this court, however, appellants asserted that the District Court did not decide the case on the basis of the Uniform Commercial Code because it had before it only the issues stipulated by the parties and neither party had stipulated relevant sections of the Code. *See* Fed.R.Civ.P. 42(b). Appellee explained in its oral argument that it saw this case as one involving a third party beneficiary on a warranty agreement; it had not invoked the Uniform Commercial Code because it was doubtful whether, under Iowa law, Code warranties extend to third parties. Further, because the Code imposes the obligation of "good faith" on all parties to a bargain, appellee appears to have been reluctant to rely on Code provisions alone, fearing a finding of overreaching by the trial court might deprive it of the Code's protection.

6. The District Court found that the label on the Preforan 15G read as follows:

> Seller warrants that the product conforms to its chemical description and is reasonably fit for the purpose stated on the label when used in accordance with directions under normal conditions of use . . . in no case shall CIBA-GEIGY [or] the seller be liable for consequential, special, or indirect damages resulting from the use or handling of this product. . . .

resentatives with whom he negotiated the release knew that approximately 300 complaints concerning the performance of Preforan 15G would lead to negotiations for cash settlements.

 The rule is that, in order to vitiate a settlement, a mistake must be mutual, material, and concerned with a *present* or *past fact.* Stetzel v. Dickenson, 174 N.W.2d 438 (Iowa 1970). The record in this case indicates that if any mistake characterized Anderson's settlement negotiations, it concerned a future fact. Anderson signed the release on September 10, 1971. The first cash settlement executed by Ciba-Geigy for a Preforan 15G complaint was paid on November 16 or 17, 1971. The testimony of Don Ward, currently the technical marketing advisor for Ciba-Geigy and formerly the technical service manager for its predecessor, Ciba Agro Chemical Company, indicates that neither he nor Mr. Harrison (the corporate representative who visited Anderson's farm with the report form) nor William Gurnee (Division Counsel for Ciba-Geigy) knew in August that cash settlements would be offered at a later date. As the Iowa Supreme Court has observed,

> Practically every settlement . . . involves the element of chance as to future consequences and developments. There are usually unknown and unknowable conditions . . . that may affect the ultimate recovery or failure of recovery. Mutual ignorance of their existence cannot constitute 'mutual mistake'.

> Stetzel v. Dickenson, *supra,* 174 N.W. 2d at 442.

Moreover, where the facts as found by the District Court and as stated by the parties in their appellate briefs simply show that one of the parties took a hard line in negotiation, there is no basis for inferring a mistake. We sustain the District Court's findings of fact and its legal conclusion that the release was binding as well as valid.

Affirmed.