H. NELSON, appellee, v. FRANK BARNICK, appellant, and ANNABELLE BARNICK, defendant-appellee.

No. 48423.

(Reported in 63 N.W.2d 911)

APRIL 7, 1954.

REHEARING DENIED JUNE 18, 1954.

Raymond S. Hill and Kindig & Beebe, all of Sioux City, for appellant.

Bernard T. Caine, of Kingman, Arizona, for appellee Annabelle Barnick.

Warren R. Stienstra and Ray N. Berry, both of Sioux City, for appellee H. Nelson.

WENNERSTRUM, J.—Plaintiff brought an action in equity and sought an accounting against his sister and brother-in-law claiming he was entitled to a one-half interest in the profits from the operation of an apartment house in Sioux City, as well as a one-half interest in the proceeds received from the sale of it. The defendant Frank A. Barnick, the brother-in-law, in his answer denied the claims of the plaintiff and contended the plaintiff in no manner had acquired a partnership interest. He also claimed whatever the plaintiff had done in connection with the negotiations for the purchase of several properties was by

reason of his position as defendant's attorney. In the same answer a like contention was made on behalf of Annabelle Barnick, but in a later answer filed in her behalf by another attorney who had been selected by the plaintiff she admitted in substance the allegations of plaintiff's petition. The cause was referred to a referee who, after hearing the evidence, found that a partnership arrangement had been established between the parties. He made an accounting and determined the amount due the plaintiff and granted him one half of the net proceeds received from the operation of the apartment and one half of the balance of the proceeds resulting from its sale. Objections were filed to the referee's report. Upon submission of the report and the objections thereto to the district court, it affirmed the referee's findings and conclusions and entered judgment against the defendants. The defendant Frank A. Barnick has appealed. The defendant Annabelle Barnick died subsequent to the trial of this action. There was no appeal taken by her during her lifetime or later on behalf of her estate.

· The present litigation developed as the result of a contract entered into by Frank A. Barnick with a John Maclay for the purchase of the Unity Apartment in Sioux City, Iowa, which contract was entered into January 9, 1946. The purchase consideration was $17,500 with $2500 payable upon the approval of the title and $150 per month thereafter.

There is substantiated evidence that the preliminary negotiations for the purchase of the apartment building were carried on by H. F. Nelson. It is definitely shown that Nelson was personally responsible in getting the purchase price reduced from $30,000 to $17,500 and the down payment reduced from $4000 to $2500.

During the period prior to her incapacity by reason of sickness Annabelle Barnick handled the bookwork and accounting in connection with the operation of the apartment. However, for a short period of time immediately after the contract of purchase was entered into H. F. Nelson gave attention to the collection of the rentals and the payment of necessary expenses. Thereafter the apartment was operated by Frank A. Barnick until sometime during the year 1952 when it was sold on contract to a John O. Olson. The sale price was $55,000 with a down payment of

$10,000 and the balance of $45,000 was payable at the rate of $300 per month. The plaintiff's action was brought after this last contract was entered into. The plaintiff claims there was an oral agreement relative to a partnership. The defendant Frank A. Barnick claims there was no such agreement, that the proof submitted during the hearing did not show the establishment of such an arrangement, that the testimony upon which the plaintiff relies for the establishment of a partnership was in violation of the statute of frauds and also asserts any action that had been taken which was indicative of the establishment of a partnership had developed by virtue of the violation of the fiduciary relationship existing between the plaintiff and the defendants as attorney and client and through the family relationship which then existed.

Prior to the contract purchase of the Unity Apartment Frank A. Barnick had lived for a number of years in Saint Paul, Minnesota, and had bought, operated and sold several apartment properties. Apparently as the result of communications or conferences between the defendant Barnick and plaintiff-Nelson an arrangement was entered into between them for the purchase of properties in Sioux City. This is shown by an exhibit which was introduced in evidence and which pertained in part to properties other than the Unity Apartment. It is in the handwriting of H. F. Nelson and shows the amounts of money received and due from properties other than the Unity Apartment and also shows the initial payments made by the respective parties on the apartment. It is therein shown Barnick first contributed $200 and then made a subsequent payment of $1300 and that Nelson had contributed $1000 and that there was $250 then due on the transaction from Nelson. In this computation, after allowance to the several parties, it is shown there was due from Barnick to Nelson as a result of the several transactions the sum of $683.14. On one of the computation sheets there is a written statement signed by Annabelle A. Barnick as follows: "This settles accounts on these sheets and half interest of Lum [H. F. Nelson] & half interest of ourselves in 13th and Douglas [Unity] Apt." Although the defendant Barnick claims he did not know of this computation there is in the record

a check dated February 16, 1947, signed by Frank A. Barnick payable to H. F. Nelson in the amount of $683.14. It bears the endorsement of H. F. Nelson. There is also the testimony of H. F. Nelson and his mother, Mrs. Stella Nelson, substantiating facts noted in connection with the computation. Mrs. Nelson and H. F. Nelson testified that Frank A. Barnick was in the room at the time the figures were discussed and that Mr. Barnick participated in some degree in the conversation relative to these matters.

As bearing upon the fact there was some contemplated partnership arrangement there is a letter written by Frank A. Barnick dated December 5, 1945, in which he states in part, "* * * I am enclosing check for Two Hundred to help on the down payment * * *." There is a further letter in the record, the major portion of which was written by Annabelle Barnick, in which she states in part, "* * * Were you interested in investing some of your money in the apt. Did you want to go into partnership or what. That is what Barney wants to know also. If you are interested in being partners how much can you put in. You see Lum if you want to be a partner we have to know how much you have to put in so we know how much we have to raise. * * *" At the conclusion of the letter there appears to be an addition signed by Frank A. Barnick which states in part, "* * * Lum as I had Annabelle write this for me as I see it it seems to be a very good deal even if it brough(t) in $50.00 per month per a partner it would be good interest * * *. Yours Frank"

Included in the record are copies of the federal income tax returns for the Unity Apartment for the years 1946, 1947, 1948 and 1949. These returns were compiled from the records kept by Annabelle Barnick and were prepared by the plaintiff, H. F. Nelson.

The 1949 return was signed by H. F. Nelson as a partner and shows a fifty per cent interest of Frank and Annabelle Barnick and a fifty per cent interest for H. F. Nelson. The 1948 return was signed by H. F. Nelson and Annabelle A. Barnick. The 1947 return was signed by Frank Barnick and Annabelle Barnick and sets forth a fifty per cent interest to the Barnicks and a fifty per cent interest to Nelson. The 1946 return

was signed by Frank Barnick before Harold F. Nelson, notary. Barnick and Nelson were shown as partners. Frank Barnick maintained he did not have any knowledge of the manner in which these returns were made out and denied his signature on the returns that purport to bear his name.

The fact that the returns were made in the manner in which they were gives credence to the contention of the plaintiff that there was a partnership arrangement. The plaintiff maintains the reason the various properties were held in the name of Frank Barnick was because he was having or had had some marital trouble and he felt he was not in a position to have any property in his own name. There are other items of evidence which bear upon the claimed partnership relation, but for the purpose of brevity we shall not set out further details.

■ I. There is one phase of this appeal which should receive our initial study. The appellee contends we should give particular consideration to the findings and conclusions of the referee which were confirmed and approved by the trial court. It is contended the referee had the witnesses before him and was in a better position than we are to evaluate their testimony. We have heretofore followed this rule in equity cases. However, this rule does not appear to us to be here applicable. Rules 207 through 214, R.C.P., pertain to the reference by a trial court to a master, referee, auditor or an examiner for hearing and initial determination. In rule 214 it is stated, "* * * The court shall *accept the master's findings of fact* unless clearly erroneous; and may adopt, reject or modify the report wholly or in any part, or recommit it with instructions." (Italics supplied.) In Cook's Iowa Rules of Civil Procedure, Volume 2, under rule 207 at page 496 the author states that the rules relative to a reference of matters to a master or a referee are largely based on the Federal Rules of Civil Procedure (rule 53), and that where both have similar provisions federal decisions may be persuasive. The federal rule 53(e)(2) is in part as follows: "In Non-Jury Actions. In an action to be tried without a jury *the court shall accept the master's findings of fact* unless clearly erroneous." (Italics supplied.)

In rule 179, R.C.P., which pertains to findings by a court, there is a further reference to the findings of a master, as follows:

"(a) * * * Findings of a master shall be deemed those of the court to the extent it adopts them.

"(b) * * * But a party, on appeal, may challenge the sufficiency of the evidence to sustain any finding, without having objected to it by such motion or otherwise."

The quoted portion of rule 179(a) is similar to rule 52(a), Federal Rules of Civil Procedure, and rule 179(b), although not worded the same as Federal rule 52(b), has the same meaning.

The two sections of the Iowa rules should be considered together and reconciled if at all possible. We believe they can be. It will be observed under rule 214, R.C.P., a trial court shall accept the master's findings of fact unless it determines they are clearly erroneous. And under rule 179, R.C.P., it is also anticipated there will be a review of the facts. Under each rule it is the duty of the trial court, as well as this court, to review the master's findings of fact and it is our particular duty to determine whether they are clearly erroneous.

Federal cases dealing with federal procedure and rules in regard to a reference by a court seem applicable to the instant case. This is particularly true because of the similarity of the federal rules to our rules of civil procedure. In D. M. W. Contracting Co., Inc. v. Stolz (1946) 81 App. D. C. 334, 158 F.2d 405, 407, it is stated:

"The terms of Rule 53(e)(1) make clear that the court can refer both issues of law and issues of fact to the master. But this does not mean that the master is clothed with the authority, by such a reference, to make a final determination of all the issues. It is true that the next subparagraph, 53(e)(2), provides that in a nonjury action the master's findings of fact shall be accepted by the court unless they are clearly erroneous, but there is no provision that the court must accept the conclusions of law and the same subparagraph goes on to provide that the parties may file an objection to the report and make application to the court *for action upon the report* and further that 'the court after hearing *may adopt the report or may modify it or may reject it* in whole or in part.' (Italics supplied) And in order for the court to take such action on the report subpara-

graph 53(e)(1) makes provision for the court to have before it a transcript of the proceedings, of the evidence and of the original exhibits.

"It appears from the foregoing that it is the trial court in such a case who makes the final determination of all the issues. The report of the master is advisory only and is without effect until confirmed by the court. For while he is charged with accepting the master's findings of fact unless clearly erroneous, it is necessary for him to review the transcript of the proceedings to determine if such error has been made, and when objection is taken to the report, as was done here, he is bound to review the transcript of the proceedings, evidence and exhibits to determine for himself whether the master's report should be accepted, rejected wholly or partly, modified, recommitted with instructions, or whether he should receive further evidence. And in no instance is he bound by the master's conclusions of law."

And in United States v. Waymire (1953) 10 Cir., Wyo., 202 F. 2d 550, 553, it is also stated: "And even though there is evidence to sustain findings of a master or a commission, as the case may be, they are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U. S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746; United States v. Oregon State Medical Society, 343 U. S. 326, 339, 72 S. Ct. 690, 96 L. Ed. 978."

Courts have also held that findings of a master, where there has been conflicting testimony, will not be set aside unless they are clearly erroneous. Santa Cruz Oil Corp. v. Allbright-Nell Co. (1940) 7 Cir., Ill., 115 F.2d 604, 607, with cited cases; United States, for Use of Chamberlain Metal Weatherstrip Co. v. Madsen Constr. Co. (1943) 6 Cir., Ohio, 139 F.2d 613, 615. See also 76 C. J. S., References, sections 140-143; 5 C. J. S., Appeal and Error, sections 1665-1669.

In United States v. Oregon State Medical Society (1952) 343 U. S. 326, 339, 72 S. Ct. 690, 698, 96 L. Ed. 978, 988, the United States Supreme Court stated, "* * * 'A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U. S. 364, 395, 92 L. Ed. 746, 765, 68 S. Ct. 525."

■■ We are mindful that this is an appeal in an equity action and consequently is reviewable by us de novo. It is also our responsibility to keep in mind the various rules which have been heretofore set forth. However, where there is apparent error in the trial court's findings of fact based on a master's findings of fact we should make correction. These conclusions find support in United States v. Yellow Cab Co. (1949) 338 U. S. 338, 70 S. Ct. 177, 94 L. Ed. 150, where the Supreme Court of the United States held that court on appeal must correct clear error even in findings of fact. After a complete review of the record in the instant case we are convinced there were no clearly erroneous rulings of the referee and the district court in their respective holdings.

■ Although not determinative of this case it might not be amiss to state that reference to a master or referee should only be made when the accounts and records are so complicated that the reference would be materially helpful to the court in its final determination of the facts and of the cause generally. Reference should be the exception and not the rule.

■ II. The defendant asserts that the referee whose report was confirmed and approved by the trial court erred in considering parol testimony in regard to the establishment of a partnership because such testimony is in violation of the statute of frauds. Section 622.32, 1950 Code.

In Blythe et al. v. Cummings, 190 Iowa 1239, 1242, 176 N.W. 688, 689, we held, "* * * they [counsel] do not claim that, if an oral agreement between the parties, based upon a valid consideration to purchase the land jointly for the purpose of improving and selling same at a profit, is shown, the evidence is incompetent because within the inhibitions of the statute. It is well settled that a partnership agreement for the purchase and sale of real estate may be proven by parol testimony. *Richards v. Grinnell*, 63 Iowa 44; *Pennybacker v. Leary*, 65 Iowa 220; *Doyle v. Burns*, 123 Iowa 488; *Hammel v. Feigh*, (Minn.) 173 N.W. 570."

The situation in the cited cases is quite similar to the facts in the instant case. See also Kellum v. Robinson, 193 Iowa 1277, 1281, 188 N.W. 821, annotation 27 A. L. R.2d 1300. The cases cited by the defendant are not applicable. In the present case we are not concerned with an agreement to convey real estate but with a partnership arrangement relative to the acquiring, holding and operation of real estate. It is our conclusion the rule of evidence based on the statute of frauds is not here applicable and the parol evidence was admissible and should be considered.

III. Where there has been no particular agreement relative to losses this may be implied where a partnership has been established by other evidence. This has been the holding of our court in Danico v. Ford, 230 Iowa 1237, 1241, 300 N.W. 547; Malvern National Bank v. Halliday, 195 Iowa 734, 738, 192 N.W. 843; Veenstra v. Mathews, 194 Iowa 792, 794, 190 N.W. 382. And in the instant case, as shown by the income tax reports, there was evidence of losses in connection with the operation of the apartment.

IV. There are other questions presented in the respective briefs of the parties. In the light of our holdings in prior divisions we do not deem it necessary to comment on the other propositions submitted. For the reasons previously stated we affirm.—Affirmed.

All JUSTICES concur.