Marla ROWEN, Mary E. Farnsworth for Themselves and All Other Policy Holders-Members of Lemars Mutual Insurance Company of Iowa, and For Themselves and All Others Similarly Situated, Appellees, Cross-Appellants,

v.

LEMARS MUTUAL INSURANCE COMPANY OF IOWA, Alice Alesch, Executor of the Estate of John Alesch, a/k/a John H. Alesch, Alice W. Alesch, M.H. Tappan, W.K. Tappan, P.G. Vander Meer, M.H. Gearke, John M. Vollmar, Burton Dull, the Iowa Mutual Insurance Company of De Witt, Iowa, Alesch, Inc.; Margaret A. Sevenich, Mary Kay Buffington, and Jane M. Warnock, Appellants, Cross-Appellees,

and

Clyde Eastman, Raymond A. Brown, William Couch, George S. Howes, Carl J. Smith, Carman G. Smith, Defendants, Cross-Appellees.

No. 69220.

Supreme Court of Iowa.

April 11, 1984.

Rehearing Denied June 8, 1984.

R. Richard Bittner and Robert D. Lambert of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, and Thomas L. McCullough of McCullough Law Firm, P.C., Sac City, for appellant, cross-appellee Iowa Mut. Ins. Co.

P.L. Nymann, Sioux City, for appellants, cross-appellees M.H. and W.K. Tappan.

Leo E. Fitzgibbons and Harold W. White of Fitzgibbons Brothers, Estherville, for appellant cross-appellee Dull.

Marvin F. Heidman and Charles T. Patterson of Gleysteen, Harper, Eismoe, Heidman & Redmond, Sioux City, for appellants cross-appellees Alesch, Sevenich, Buffington and Warnock.

Michael R. Mundt and D.R. Franck of Franck, Mundt, Nepper & Franck, Denison, for appellees/cross-appellants.

Robert E. Beebe of Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, for appellant, cross-appellee M.H. Gearke.

James M. McNally and James L. George of McNally & George, Le Mars, for appellants, cross-appellees Vander Meer and Vollmar.

Timothy J. Walker of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellants, cross-appellees Brown, Crouch, Howes, and Smiths.

Robert D. Mishne of Klass, Whicher & Mishne, Sioux City, for defendant, cross-appellee LeMars.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, McGIVERIN and SCHULTZ, JJ.

McCORMICK, Justice.

This case involves challenges to a trial court judgment concerning financial issues in the court-ordered separation of LeMars Mutual Insurance Company (LeMars) from The Iowa Mutual Insurance Company of DeWitt, Iowa (Iowa Mutual). The trial court reserved jurisdiction only to supervise the LeMars interim board of directors pending election of a new board. Several defendants appeal and plaintiffs cross-appeal from the judgment. Prior appeals in the same case are reported at 230 N.W.2d 905 (Iowa 1975) and 282 N.W.2d 639 (Iowa 1979) (*Rowen II*). In order to obviate any issue concerning the finality of the judgment, we assume the present appeals and cross-appeal are from an interlocutory or-

der but accept review in accordance with Iowa Rule of Appellate Procedure 1(c). We affirm on certain of the appeals, modify and affirm on the others, and modify and affirm on the cross-appeal. We also remand for entry of modified judgment.

The case is a derivative action commenced by two policy-holders of LeMars to set aside a contract between Iowa Mutual and Alesch, Inc., an insurance agency. In *Rowen II* this court held that the transaction constituted an unlawful sale of control of LeMars to Iowa Mutual. Defendants are Iowa Mutual and its officers and directors, Alesch, Inc., and its officers and directors, and the officers and directors of LeMars. LeMars itself is a nominal defendant.

In *Rowen II* this court decided the liability issues in the case, upheld in part an order for punitive damages, and approved provisions of the trial court's decree providing for appointment of a special master, procedures for separating the two mutual companies and ordering restitution. The present judgment resulted from proceedings after remand.

Iowa Mutual had control of LeMars for almost ten years. The special master, attorney G. Daniel Gildemeister of Sioux City, determined that LeMars was entitled to restitution from defendants in the amount of $997,266, less a credit of $22,544 for uncompensated management services. The master's report was adopted by the trial court. As part of its judgment the court allowed interest on the various components of the award at five percent until June 1, 1982, and at ten percent thereafter. On motion of the defendants, the court reduced the punitive damage awards upheld by this court in *Rowen II*. Interest on those awards was allowed at the rate of seven percent from October 3, 1977.

I. *Iowa Mutual's appeal.* Iowa Mutual's appeal raises a threshold question concerning the scope of our review. Because this case is equitable, our review of trial court findings of fact is de novo. The case now, however, involves findings of fact of a special master. The parties have differing views on this court's scope of review of the master's determinations.

The issue is governed by Iowa Rule of Civil Procedure 214, which provides in material part: "The court shall accept the master's findings of fact unless clearly erroneous; and may adopt, reject or modify the report wholly or in any part, or recommit it with instructions." Iowa Mutual asserts this rule binds only the district court, leaving this court with the duty to give de novo review to the master's findings of fact. Prior cases resolve the issue adversely to Iowa Mutual's position.

■ Our review of the district court's decision remains de novo. In reviewing the master's findings of fact, however, we are in the same position as the district court. Like the district court, this court must "review the evidence before the master in an equity case to determine whether the findings adopted by the [district] court are clearly erroneous." *Iowa Public Service Co. v. City of Sioux City,* 252 Iowa 380, 386, 107 N.W.2d 109, 112 (1961).

■ Rule 214 adopts the federal "clear error" standard of review for a master's findings. *Nelson v. Barnick,* 245 Iowa 982, 987–90, 63 N.W.2d 911, 914–16 (1954). Under that standard, a finding of fact is erroneous if the reviewing court on the entire record has a definite and firm conviction that a mistake has been committed. *Id.* at 989–90, 63 N.W.2d at 915. Because this court's duty of de novo review puts it in the shoes of the district court in reviewing the master's report, we take an independent look at the master's report and make our own determination under the clear error standard. We now turn to Iowa Mutual's specific claims of error.

A. *Credits relating to transfer of Alesch, Inc.* In *Rowen II* this court determined that Iowa Mutual's purchase of Alesch, Inc. constituted in part an illegal purchase of control of LeMars. *See* 282 N.W.2d at 648–51. We affirmed relief ordered by the trial court which included (1) appointment of the special master, (2) transfer of the stock of Alesch, Inc. from

Iowa Mutual to LeMars, (3) separation of Iowa Mutual and LeMars with court appointment and supervision of interim directors of each board and election of new boards for each of these parties and for Alesch, Inc., and (4) certain monetary awards. *Id.* at 656–64. The master and trial court monetary determinations are at issue here.

One item concerns $307,500 which this court determined was the premium paid by Iowa Mutual to Alesch, Inc. for control of LeMars. The total purchase price was $516,176.16. Of that amount $116,176.16 was in liquid assets. Exclusive of those assets we found the Alesch, Inc. stock was worth $92,500. The $307,500 was the difference between the purchase price and the value of the liquid assets and stock. *Id.* at 658–59. We found that LeMars was to be "reimbursed" the $307,500. *Id.* Iowa Mutual now asserts it should receive credit for the $307,500 because the purchase price for Alesch, Inc. came from its policyholders.

■ We refuse to modify the adjudication in *Rowen II.* The authorities cited in that opinion support ordering disgorgement of a premium illegally paid for corporate control to the corporation whose control was purchased. The reimbursement is not for money paid but for the wrongful sale of control. We do not believe the right to reimbursement is foreclosed merely because control was not lost permanently. The rights involved are those of the wronged policyholders of LeMars against Alesch, Inc. That the policyholders of Iowa Mutual were also wronged does not affect the rights of LeMars. No issue was presented then or now regarding recourse that may be available to Iowa Mutual policyholders for the wrong done to them. The master and district court were correct in refusing to give Iowa Mutual credit against LeMars for the $307,500 control premium.

■ This court did order that Iowa Mutual be given credit for the $92,500 value of the Alesch, Inc. stock upon transfer of the stock to LeMars. *Id.* at 661. In ruling on a rule of civil procedure 179(b) motion by Iowa Mutual raising the issue, the trial court referred to this court's holding that upon transfer of the stock LeMars was to pay Iowa Mutual $92,500. Thus the court treated the issue as already having been adjudicated and did not specifically order the credit to be given. We direct that to remove any uncertainty about the issue the judgment should be modified to mandate the credit.

■ One credit upon transfer of the Alesch, Inc. stock to LeMars does appear before now to have been overlooked by this court and, consequently, the trial court. It concerns a $100,000 certificate of deposit which was among the liquid assets of Alesch, Inc. when the agency was purchased by Iowa Mutual. This item does not appear among the credits given Iowa Mutual by the master. Despite a complaint concerning this omission by Iowa Mutual in its rule 179(b) motion, the trial court did not address the issue. Because the liquid assets of Alesch, Inc. were treated by this court as an addition to the stock value, we find that the $100,000 should be an additional credit running to Iowa Mutual from LeMars. We modify the findings of the master and trial court to add that amount as a credit. The remaining value of Alesch, Inc. liquid assets is sufficiently accounted for in a credit allowed Iowa Mutual for the increase in book value of Alesch, Inc. stock between the date of purchase and date of transfer of the stock to LeMars.

■ In *Rowen II* this court determined that Iowa Mutual should receive credit for its "actual and reasonable cost" of producing profit for LeMars and Alesch, Inc. *Id.* at 657. The court found Iowa Mutual had arranged to recoup the premium paid for control of LeMars through excessive management expenses charged to LeMars by Alesch, Inc. *Id.* at 656. Rather than apply the "no inquiry" rule which would have denied credit for expenses to Iowa Mutual altogether, the court found that Iowa Mutual should be allowed its reasonable expenses and held that Iowa Mutual and Al-

esch, Inc. should be given an opportunity to prove what credit should be given. *Id.* at 658. Iowa Mutual now complains that the amount of credit determined by the master and district court is incorrect.

We have carefully examined the master's findings in light of Iowa Mutual's complaint and the relevant evidence. Most issues concerning expense credit turn on the sufficiency and probative force of the evidence. Iowa Mutual has not demonstrated clear error in the master's findings in the respects alleged. In fact, the total expense credit exceeds the amount determined under an expense ratio that an expert testified was reasonable.

Except for confirming the $92,500 credit due on the Alesch, Inc. stock and ordering an additional credit of $100,000 based on the value of Alesch, Inc. liquid assets on the date of acquisition, we affirm the trial court determination of credits due Iowa Mutual relating to transfer to LeMars of Alesch, Inc.

B. *Credit for services by Iowa Mutual to LeMars.* During the ten-year period that Iowa Mutual controlled LeMars, it provided certain services to LeMars for which it sought credit. As with the services provided by Alesch, Inc., this court directed in *Rowen II* that Iowa Mutual be given an opportunity to prove the amount it should be credited for its actual and reasonable costs. *Id.* at 657–58. The main areas of dispute concern coadjusting expenses, computer charges and management expenses.

■ A coadjustment program initiated by Iowa Mutual provided for sharing by the companies of the services of employee adjusters with a formula for apportioning total employee adjustment costs. The cost-sharing arrangement did not take into account a much greater reliance by LeMars on independent adjusters. In findings adopted by the district court, the master adopted a different formula resulting in a lower coadjusting credit than sought by Iowa Mutual. Plaintiffs cross-appeal because the master did not reduce that amount by additional LeMars' expense for independent adjusters. We find no clear

error in the master's determination and therefore reject both the appeal and cross-appeal on this point.

■ As to computer charges, Iowa Mutual seeks a greater credit than it billed LeMars for. By cross-appeal, plaintiffs assert the computer services cost Iowa Mutual nothing because the services did not add to fixed capital costs that would have been incurred by Iowa Mutual in any event based on unused computer capacity. The master allowed credit for all of Iowa Mutual's billed amount. Although this was not entirely an "actual" cost to Iowa Mutual, it was a "reasonable cost" for which Iowa Mutual was entitled to credit under *Rowen II. Id.* at 657–58. We find no clear error in the master's determination.

■ The master disallowed Iowa Mutual any credit for its alleged management of LeMars. The master found a failure of proof by Iowa Mutual on this issue, concluding that the record did not show Iowa Mutual provided management services in addition to those provided by Alesch, Inc. Although there is evidence which would support a contrary conclusion, we do not find clear error in the master's findings.

We have considered all of Iowa Mutual's contentions and except as indicated find them without merit. We also reject plaintiffs' cross-appeal challenge to the credits for coadjusting and computer services.

II. *Burton Dull's appeal.* The liability of Burton Dull, LeMars' attorney, was addressed in *Rowen II. Id.* at 654–56. This court held that he was not to be allowed any attorney fees paid by LeMars after April 21, 1970 "for services rendered in connection with, or arising out of, the sale of Alesch, Inc. and the subsequent takeover of LeMars by Iowa Mutual." *Id.* at 663. We also upheld a punitive damage award against him. *Id.* at 661–62. In appealing from the trial court's judgment, he contends the court erred in determining his retainer fee was excessive, in disallowing certain claims for non-retainer services, in allowing only $35 an hour for his non-retainer services after 1977, and in refusing

to eliminate the punitive damage award against him. We will discuss all of the punitive damage awards subsequently.

■ At the time of the takeover, Dull's retainer was increased from $600 to $1000 per month. The master allowed $255 per month of the increase and Dull contends he was entitled to all of it. We find no clear error in the master's finding.

■ Nor do we find clear error in the value placed on Dull's non-retainer services. The master allowed the same hourly rate Dull charged LeMars before 1977. Moreover, we agree with the trial court that there was a failure of proof on the claims for additional alleged non-retainer services.

III. *The M.H. Tappan and W.K. Tappan appeals.* M.H. and W.K. Tappan are husband and wife. They were directors of LeMars who resigned as part of the takeover by Iowa Mutual.

Through obvious inadvertence, the name of W.K. Tappan was omitted from the trial court's initial judgment. The trial court attempted to correct the omission by entering a nunc pro tunc order after other defendants had filed notice of appeal. W.K. Tappan filed a special appearance after entry of the nunc pro tunc order and, when it was not ruled on, filed notice of appeal within thirty days of the date of the nunc pro tunc order. The trial court subsequently overruled the special appearance. We must first decide whether this court has jurisdiction of W.K. Tappan's appeal.

■ In asserting the trial court was without jurisdiction to enter a nunc pro tunc order while the other defendants' appeals were pending, W.K. Tappan relies on *State v. Dakota County, Nebraska,* 250 Iowa 318, 323, 93 N.W.2d 595, 598 (1958). The *Dakota County* case stands, however, only for the proposition that a trial court lacks jurisdiction to entertain an application for nunc pro tunc order by a party who has appealed from the judgment sought to be amended. We have granted limited remand to take care of problems of that kind.

*See In re Marriage of McCreary,* 276 N.W.2d 399, 400 (Iowa 1979).

■ In contrast, no judgment had been entered against W.K. Tappan in the present case. The appeals by other defendants and cross-appeal by plaintiffs did not deprive the court of jurisdiction to enter judgment against her. The district court case against her was not over until she suffered judgment. *See Stearns v. Kean,* 303 N.W.2d 408, 410 (Iowa 1981). Although the order was characterized as "nunc pro tunc," it was actually an original judgment against W.K. as opposed to a "now for then" amendment. Because we accept the appeals whether the trial court's judgment is final or interlocutory, we need not decide whether judgment was interlocutory as to the other defendants before judgment was entered against W.K. Tappan.

■ W.K. separately contends the judgment was void because entered without notice. This again overlooks its character as an original judgment against her upon full submission of the case. In any event, although absence of notice is a basis for setting aside a true nunc pro tunc order when unfair prejudice is shown, *McVay v. Kenneth E. Montz Implement Co.,* 287 N.W.2d 149, 150 (Iowa 1980), no such showing has been made here. W.K. separately challenges our jurisdiction of plaintiffs' cross-appeal, but no cross-appeal was taken to her appeal. She is thus in no position to complain. M.H. Tappan raises the same issue but relies on an alleged defect affecting only certain other defendants. He has shown no defect affecting him.

■ We therefore address the merits of the appeals of M.H. and W.K. Tappan. M.H. Tappan challenges the refusal of the trial court to eliminate the punitive damage award against him. We discuss this in connection with plaintiffs' cross-appeal. Both Tappans contend the trial court erred in ordering them to reimburse LeMars for pensions awarded them, letting stand only a 1967 pension awarded to M.H. Tappan. The trial court merely followed the di-

rective of this court in *Rowen II.* *See* 282 N.W.2d at 663. Because the order under review in that case was interlocutory, however, we are free to reexamine it.

 It was our intention in *Rowen II* to disallow any pensions or increases in pension benefits awarded outgoing LeMars directors that had any connection to the sale of control. We specifically allowed the pensions granted to M.H. Tappan on January 17, 1967 and to John Alesch on January 18, 1966. We specifically disallowed pensions granted or increased at a LeMars directors meeting on December 2, 1969. We did not mention action concerning pensions at a LeMars policyholders meeting on April 16, 1968. At that time a $300 per year pension was established for all retiring directors with five years service not otherwise covered by a pension plan. This would include W.K. Tappan. At the same meeting, the term of the M.H. Tappan pension approved in 1967 was extended from ten years to ten years or life, whichever was longer.

The action at the April 16, 1968, meeting had no connection with the subsequent sale of control. We therefore hold that the pension rights established for the Tappans at that meeting should not be taken away. To the extent the trial court's judgment ordered reimbursement from the Tappans for those benefits, we modify the judgment to eliminate that requirement.

IV. *The appeals of P.A. Vander Meer, John M. Vollmar and M.H. Gearke.* Vander Meer, Vollmar and Gearke are also former directors of LeMars who left their positions as part of the sale of control transaction. They adopt in their behalf the brief and argument of the Tappans. As with the Tappans, we hold they are entitled to any pension rights acquired by them at the April 1968 LeMars policyholders' meeting. Any subsequently established pension benefits are invalid and must be returned to LeMars as ordered by the trial court. We modify the judgment relating to recovery of pension benefits accordingly.

V. *The Alesch family appeal.* The stockholders of Alesch, Inc. at the time of the liability determinations in *Rowen II* were Alice Alesch, individually and as executor of the estate of John H. Alesch, Margaret A. Sevenich, Mary K. Buffington and Jane M. Warnock (the Alesches). Alice Alesch, individually and as executor, filed timely appeal from the trial court's judgment. The others did not appeal. All of the Alesches joined, however, in moving to dismiss plaintiffs' cross-appeal, and we ordered the motion submitted with the case. We first address the motion.

The basis of the motion to dismiss is the fact that plaintiffs did not serve their cross-appeal on the Alesches until almost two months after it was filed. The Alesches allege the failure to serve them earlier was jurisdictional and also prejudiced them.

 Under the present rules of appellate procedure, an appeal is "taken and perfected by filing a notice with the clerk of the court where the order, judgment or decree was entered, signed by appellant or his attorney." Iowa R.App.P. 6(a). The rule also requires the appellant to "serve a copy of the notice on each other party or his counsel in the manner prescribed in rule 82(g), Rules of Civil Procedure." *Id.* Proof of service is to be endorsed on the notice. Because an appeal may be "taken and perfected" without service of the notice, we conclude that service is not jurisdictional. Cases relied on by the Alesches for a different result were decided under a now repealed statute with different requirements. *See, e.g., Bates v. Adel State Bank,* 222 Iowa 1323, 271 N.W. 638 (1937). The present rule thus makes service mandatory but not jurisdictional. Noncompliance with the rule will, however, subject a party to sanctions including possible dismissal in appropriate cases.

 Defendants Sevenich, Buffington and Warnock contend they were prejudiced by the failure of timely service because they lost the opportunity to "cross-appeal" from the cross-appeal, which constituted an appeal as to them. They did not lose the right in resisting the appeal to urge any ground on which the trial court's

judgment could be upheld. *See In re Estate of Poulos,* 229 N.W.2d 721, 724–25 (Iowa 1975). Moreover, they did file a purported cross-appeal but did not seek any change in the judgment against them. We thus find no prejudice to them, and we overrule their motion to dismiss the cross-appeal. Alice Alesch filed a timely appeal. Therefore her rights were fully protected, and we also overrule her motion.

■ Several of the other defendants moved to dismiss plaintiffs' cross-appeal based on the same alleged defect in service. Those parties were all properly served with notice of the cross-appeal and are in no position to complain. Their motions to dismiss are overruled.

■ Plaintiffs separately filed a motion to dismiss the "cross-appeal" attempted by defendants Sevenich, Buffington and Warnock within five days of service upon them of plaintiffs' cross-appeal. We ordered this motion submitted with the appeal too. Because these defendants do not attack the trial court's judgment in their cross-appeal, plaintiffs' motion to dismiss raises a moot point. We therefore overrule the motion as moot.

On the merits of her appeal, Alice Alesch contends the trial court erred in refusing to allow credit against LeMars for salaries paid to John and Alice Alesch after April 1970. She also contends the court erred in determining the issue of primary and secondary liability among the defendants.

■ In *Rowen II* this court ordered restitution to LeMars for the Alesch salaries and expenses subsequent to the takeover "except to the extent, if any, that the special master finds such expenses necessary, proper, and reasonable for the operation of the business." 282 N.W.2d at 663. The special master found this order allowed credit for expenses but not for salaries, and the trial court agreed. We believe this interpretation is supported by the separate provision in our *Rowen II* decision that LeMars be reimbursed for "[a]ll LeMars' director fees and all salaries and director fees of Alesch, Inc." *Id.* We adhere to

that provision and therefore uphold the disallowance of Alesch salary credit.

■ The trial court's determination of primary and secondary liability was based on the following reasoning:

The Trial Court [Judge David Blair] found the defendants' liability to be joint and several. The Supreme Court affirmed the decree except as to certain defendants. This Court's decree does not alter the defendants' obligation to the plaintiffs. However, if the Court in equity is to resolve the issues before it, it would appear a determination of primary and secondary responsibility would be appropriate. Where restitution is required of payments made to individual defendants, it is clear the primary responsibility would be upon those individuals. As for amounts paid to Iowa Mutual that are to be reimbursed to LeMars Mutual under this decree, the primary responsibility would fall upon Iowa Mutual. It would also be appropriate that the court costs be taxed to the defendants in proportion to their primary responsibility for reimbursement.

Although Alice is concerned that this provision purports to affect possible claims among the defendants for contribution or indemnity, we find it does not do so. Instead we believe it merely implements this court's finding that "all profits must be accounted for and all benefits to the individuals must be returned." *Id.* at 657. It does not preclude defendants from litigating their responsibilities among themselves, and it does not affect their joint and several liability to LeMars. Nor does it affect the limitation on the liability of defendants Sevenich, Buffington and Warnock to the amounts they received from Iowa Mutual for their stock in Alesch, Inc. in excess of the stock's actual value. *Id.* at 654. We view the trial court's determination as an assessment of initial responsibility for the judgment among the defendants, without prejudice to their right to establish a basis for contribution or indemnity by subsequent action.

VI. *Punitive damages.* The appealing defendants contend the trial court erred in not sustaining their motions to vacate the punitive damage awards assessed against them which were affirmed in *Rowen II.* 282 N.W.2d at 661–62. Plaintiffs, in their cross-appeal, contend the court erred in reducing the awards in its final judgment. Even though former Iowa Mutual directors Raymond A. Brown, William Couch, George S. Howes, Carl J. Smith and Carman G. Smith did not appeal, we treat their brief as a resistance to plaintiffs' cross-appeal. The awards against the former Iowa Mutual directors and Burton Dull were reduced from $25,000 to $10,000. The award against M.H. Tappan was reduced from $10,000 to $3,000. The awards against defendants Vollmar, Vander Meer and Eastman were reduced from $3,000 to $1,000, and the $1,000 punitive damage award against defendant Gearke was eliminated. In affirming the awards in the interlocutory order under review in *Rowen II,* this court did not address the trial court's express reservation of authority to entertain motions to reduce the awards.

■ The trial court used the punitive damage assessments in part as a "control device" in an effort to obtain cooperation in the complicated process of disengaging the companies. While this is a novel use of tentative assessments of punitive damages, we cannot say the trial court lacked authority to make tentative awards subject to review before entry of final judgment. We also believe the court was entitled at that time to consider the entire record, including the events subsequent to the interlocutory appeal, in determining what awards should finally be made. Therefore we find no merit in plaintiffs' contention that the court lacked authority to reduce or vacate the awards.

■ We thus review the final awards under the principles applied to the tentative awards in *Rowen II,* having in mind the record before the trial court at the time final judgment was entered. We are not persuaded that the awards should have been vacated altogether. We therefore find no error in the trial court's decision to reduce rather than vacate entirely all of the awards except the one against Gearke. Consequently we uphold the punitive damage awards assessed in the present judgment.

VII. *Prejudgment interest.* The trial court determined that the prejudgment interest rate on the amounts required to be reimbursed to LeMars would be five percent. The prejudgment interest award was computed by the master on large identifiable transactions from the date of the transactions. On other transactions the amount was computed from the middle of the year in which the transaction occurred. The total prejudgment interest award was computed as $574,603. Interest at the rate of ten percent was ordered from July 1, 1982.

Plaintiffs contend they were entitled to prejudgment interest at the rate of ten percent from the May 1973 commencement of the action. They rely on an amendment to Iowa Code section 535.3 adopted March 28, 1980. The amended statute provides:

Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered, in which case the judgment or decree shall draw interest at the rate expressed in the contract, not exceeding the maximum applicable rate permitted by the provisions of section 535.2, which rate must be expressed in the judgment or decree. The interest shall accrue from the date of the commencement of the action.

The amendment was expressly made effective January 1, 1981, and inapplicable to judgments rendered or decrees entered of record prior to that date. *See* 1980 Iowa Acts ch. 1170, § 2.

■ The trial court held against plaintiffs on the ground the judgment in this case was entered October 3, 1977, when the interlocutory order involved in *Rowen II* was entered. It is anomalous that several defendants assert the order was not a final judgment for purposes of the amount of

punitive damages while they assert the order was final as to reimbursement even though reimbursement amounts were not determined. The October 1977 order determined the liability of defendants but did not assess restitution amounts. We believe the amendment to section 535.3 was to apply to all final judgments entered on or after January 1, 1981. The present judgment is in that class. We therefore hold that the trial court erred in finding the statute inapplicable in the present case.

Defendants rely on *First Federal Savings & Loan Association of Storm Lake v. Blass*, 316 N.W.2d 411, 415 (Iowa 1982), in contending an equity court is not bound to apply section 535.3. That case involved a judgment entered prior to the effective date of the amendment. In addition, it did apply the seven percent interest rate then provided in the statute. The court's reference to the flexibility of equitable remedies was in the context of rejecting a contention that interest should not have been assessed at all. Statutory prejudgment interest was not then provided for.

■ We have recognized the applicability of the amendment to actions filed before its effective date. *See Janda v. Iowa Industrial Hydraulics, Inc.*, 326 N.W.2d 339, 343–45 (Iowa 1982). We have also recognized the mandatory applicability of the statute even in an equity case. *See Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982). The trial court was thus obliged to order prejudgment interest at the rate of ten percent in this case from the date the action was commenced.

The statute does not mean, however, that the statutory ten percent interest on all the reimbursement amounts would start with the filing of the May 1973 petition. We do not believe the legislature intended to have prejudgment interest assessed on amounts due on transactions that did not occur until after the litigation was commenced. In those situations the right to interest would attach when the transaction occurred. *See Sedco International, S.A. v. Cory*, 522 F.Supp. 254, 331 (S.D.Iowa 1981), *aff'd*, 683

F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Therefore we uphold the trial court's determinations concerning the dates on which the statutory interest obligation commences on transactions that occurred subsequent to the filing of the petition.

■ VIII. *Interest on uncompensated expenses.* The master and trial court allowed Iowa Mutual interest on uncompensated services of Iowa Mutual to LeMars which were determined to be compensable. Plaintiffs contend the master lacked authority to do this and, in any event, lacked justification for doing so. Passing the question of the master's authority, we hold that the trial court undoubtedly had such authority in acting on the master's report. Moreover, it is fair that LeMars should pay interest on sums it owes just as defendants must pay interest on sums they owe. We reject plaintiffs' cross-appeal on this issue.

We have considered all of the contentions of all of the parties in all of the motions, appeals and cross-appeal. Some contentions have not been expressly addressed either because they palpably lack merit or because error was not preserved.

In summary we hold:

1. All motions to dismiss are overruled.

2. We confirm our prior order that Iowa Mutual receive credit for $92,500 as the value of Alesch, Inc. stock, and we direct that Iowa Mutual receive an additional credit of $100,000 for the value of liquid assets of Alesch, Inc. on the date of the control transaction.

3. We order that former LeMars directors W.K. Tappan, M.H. Tappan, P.A. Vander Meer, John H. Vollmar, and M.H. Gearke receive any pension rights acquired by them at the April 1968 LeMars policyholders meeting.

4. We order that LeMars receive prejudgment interest on restitution amounts at the rate of ten percent per annum from the date of commencement of the action or, for transactions occurring subsequent to the date the action was commenced, from

the date fixed by the trial court for identifying those transactions.

5. The trial court judgment is otherwise affirmed on the appeals and cross-appeal.

We remand the case for entry of modified judgment in conformity with this opinion.

MODIFIED, AFFIRMED, AND REMANDED ON THE APPEALS AND CROSS–APPEAL.