**Robert J. McKENZIE, Appellant,**

v.

**EASTERN IOWA TIRE, INC.,
Defendant,**

v.

**John A. CARVER, Intervenor–Appellee.**

No. 88–1243.

Supreme Court of Iowa.

Nov. 22, 1989.

R. Richard Bittner and Michael K. Bush of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Charles W. Brooke and Richard A. Davidson of Lane & Waterman, Davenport, for intervenor-appellee.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

In 1984 Robert McKenzie brought an action to liquidate the assets of Eastern Iowa Tire, Inc. (Eastern) pursuant to Iowa Code section 496A.94. McKenzie and John A. Carver each owned fifty percent of the corporate stock. In his petition McKenzie alleged that the directors and shareholders were deadlocked, the corporate assets were misapplied or wasted, and the corporation had a negative net worth. He asked the court to appoint a liquidating receiver. Eastern resisted the appointment.

In early 1985, however, the nature of the proceeding changed. Carver agreed to purchase McKenzie's interest in the corporation. Later, the court determined that Carver was an intervenor in the action. In forbearance of further litigation, the parties consented to the appointment of a special master. Their agreement and stipulation (Agreement), drafted by McKenzie and signed by the parties, gave the master the power to determine the value of the assets and liabilities of the corporation and to establish its net worth. The master was to determine a buy-out figure based on the parties' relative contributions to the corporation. In section 8, the parties stipulated that any amounts determined to be owed to McKenzie under this Agreement would be final. A contemporaneous oral agreement between the two owners guaranteed that Carver would pay McKenzie at least $400,-000.

The parties obtained a court order approving the Agreement and appointing a master. The master conducted hearings and issued a report on April 3, 1987, concluding that Carver should pay McKenzie $669,391. To arrive at this figure, the master had considered the $1,180,052 loan by McKenzie and the $1,043,069 loan by Carver as capital contributions in order to give the company a positive net worth. Since each man owned fifty percent of the corporation, the master divided the computed equity in half and added the difference between the two loan contributions to McKenzie's half to arrive at the final figure. McKenzie objected to the master's findings; Carver also filed objections to the

report. Eastern did not file objections, nor did it appear at the evidentiary hearing on the objections. The district court rejected the objections and accepted the report.

McKenzie appeals from the approval of the report. To avoid any issue concerning finality, we assume the present appeal is from an interlocutory order, and we grant review in accordance with Iowa Rule of Appellate Procedure 1(c). On appeal McKenzie claims, as he did before the trial court, that the master exceeded his authority by his interpretation of the Agreement. He claims that his entire loan to the corporation should be repaid and that he is entitled to prejudgment interest on the master's award pursuant to Iowa Code section 535.3 (1985). Carver disagrees with this interpretation and alleges that McKenzie did not preserve error on his claims.

**I.** *Scope of review.* McKenzie urges that the trial court erred in finding that the master committed clear error. A "clear error" standard of review for a master's findings is generally correct when the court is reexamining the factfinding of the master. Iowa R.Civ.P. 214; *Rowen v. LeMars Mut. Ins. Co. of Iowa,* 347 N.W.2d 630, 634 (Iowa 1984). However, there is an exception to this rule. When the parties agree that the master's findings shall be final, as we conclude that they did in section 8 of their Agreement, "only questions of law arising upon the report shall thereafter be considered." Iowa R.Civ.P. 214. Under such an agreement, usually drawn to avoid a protracted and expensive trial, the parties are bound by the master's findings. *See D'Urso v. Trapani,* 18 N.J.Super. 131, 133, 86 A.2d 836, 837 (1952).

**A** careful examination of McKenzie's claims reveals that he is not challenging the master's specific findings. Rather, he is claiming that the master used improper accounting techniques, not allowed by the Agreement setting forth his duties, to reach the final buy-out figure. To resolve this dispute, we must construe and interpret the Agreement. Construction and interpretation of contracts are to be resolved by the court as a matter of law. *See Connie's Constr. Co. v. Fireman's Fund*

*Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975). Interpretation is reviewed by the court as a legal issue unless it is dependent on extrinsic evidence. *Id.* Extrinsic evidence was presented at the hearing on the report in district court, and the court's findings of fact on this evidence are binding on us. *Id.*

**II.** *Preservation of error.* Carver contends McKenzie failed to preserve error on the issues now raised on appeal. He urges that the failure to properly raise them by written objections waives those issues for further review.

Rule 214 provides that "any party may file written objections" to the master's report. In this case McKenzie filed objections, but the thrust of the objections went to the master's valuations. McKenzie appeared at the hearing with new counsel who expressly abandoned the valuation objections and claimed errors now expressed on appeal. Furthermore, McKenzie presented an accountant's testimony challenging the master's accounting methods and his interpretation of the Agreement. McKenzie also testified concerning the circumstances leading to the drafting of the Agreement as well as to his understanding of certain of its terms.

We believe the issues now before us were tried to the court by consent. Carver had the full opportunity to address the issues in question and to cross-examine the witnesses. In an analogous situation, when a case is tried by both parties as if the pleadings embraced all of the matters considered by the referee, it is too late on appeal to raise the objection that the allegations are not sufficiently specific. *Johnson v. Carter,* 143 Iowa 95, 99–100, 120 N.W. 320, 322 (1909). "Permitting the introduction of evidence on an issue not specifically pleaded obviates the necessity of its formal presentation." *In re Estate of Millers,* 159 N.W.2d 441, 446 (Iowa 1968). McKenzie sufficiently preserved his claim of error for appeal.

**III.** *The Agreement.* McKenzie claims that the master and the district court misconstrued paragraphs 3(a), 3(b), and 3(c) of the Agreement. Specifically, he claims

that the master erred in considering his and Carver's loans as both liabilities and equity. Before we examine paragraph 3 and its subsections, we examine the entire contract in the light of familiar principles of contract construction.

In construing unambiguous written contracts, the intent of the parties, as determined by what the contract itself says, is controlling. Iowa R.App.P. 14(f)(14). We read an agreement as a whole, in accordance with the commonly accepted meaning of its terms, and do not make a new contract for the parties. *Allen v. Highway Equip. Co.*, 239 N.W.2d 135, 139 (Iowa 1976). Read in its entirety, the Agreement is a settlement of the liquidation suit under terms providing for a buy-out of McKenzie's interest by Carver. The consideration for the transfer was to be determined by the master after evaluating the net worth of the corporation and the parties' percentages of ownership based on their equity contributions.

■ The dispute centers on the method used by the master to determine ownership. McKenzie claims that the master did not follow the terms of the Agreement, and he has presented extrinsic evidence to sustain his position. Extrinsic evidence is admissible as an aid to interpretation when it "throws light on the situation of the parties, antecedent negotiations, the attendant circumstances and the objectives the parties were striving to attain." *Hamilton v. Wosepka*, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967).

McKenzie urges that the master misconstrued the terms of paragraph 3. Subparagraph (a) required that a master determine the corporate liabilities and the market value of the corporate assets, all of which were disputed by the parties. Subparagraph (b) required the master to determine the corporate liabilities "including equity contributions and loans, which are claimed by or owing to McKenzie or Carver." Subparagraph (c) required a computation of the corporation's net worth and a determination of ownership "based on equity contributions of McKenzie and Carver." It further required a determination of the

amount due the two parties as creditors. If the amounts owed to them were in disproportional amounts, the "master shall adjust the original 50/50 stock ownership to reflect such disproportionate amounts."

The master determined that the corporate liabilities were due, in most part, to the substantial loans made to the company by both McKenzie and Carver. To reach the positive net worth contemplated by paragraph 3(c), the master transferred liabilities from the debt to the equity column of the balance sheet. McKenzie claims that this capitalization procedure deviates from the Agreement and compromises his status as a creditor of the corporation. He claims that the Agreement entitles him to recover his entire contribution to the corporation as determined by the special master under 3(a) and 3(b).

In addressing McKenzie's complaints directed at the master's treatment of the debt and equity contributions of the parties, the trial court concluded that the Agreement, when read piecemeal, is somewhat ambiguous. It determined, however, that the intention of the parties was clear when the contract was read in its entirety in the context of the circumstances and the collateral agreement. When McKenzie filed his initial petition to commence liquidation proceedings, he asserted that the corporation had a negative net worth. To avoid liquidating an insolvent corporation, the parties agreed that Carver would keep the company and pay McKenzie at least $400,000 for his share of the business. Taking all these factors into account, the court determined that under the Agreement, McKenzie was not to receive full repayment of his loans to the corporation, but rather that the general purpose of the Agreement was a disposition of McKenzie's equity contributions as well as his loans. It concluded that the determination of what were loans and what were capital contributions was left up to the master.

We agree with the trial court that the correct construction of the Agreement, in light of the surrounding circumstances, allows the master to capitalize the contributions of the shareholders. If this were not

the case, the corporation would have a negative net worth, and no money would be paid under 3(c). Other provisions support the court's conclusion. Both paragraph 6, which refers to the payment scheme, and paragraph 10, which discusses further liability, refer to McKenzie's share as computed pursuant to paragraph 3(c). If McKenzie were to be repaid all of his contributions, the effect would be, in essence, to liquidate the corporation. This is just what the Agreement set out to avoid. It was, instead, to establish a buy-out price and maintain the corporation as an on-going business, so that no one would suffer losses from liquidating an insolvent business.

McKenzie's claim is also inconsistent with the collateral agreement to pay him at least $400,000. He knew when he drafted the Agreement that he had made over a $1,000,000 contribution to the corporation. He would not have agreed to be paid less than half of that amount if he thought he had just made an agreement to be completely repaid. We agree with the trial court's determination that the $400,000 guarantee is meaningful only if the Agreement is interpreted to allow the corporation to have a positive net worth by capitalizing the loans. The court, therefore, did not err in upholding the master's determination of the $669,391 buy-out figure.

**IV.** *Prejudgment Interest.* McKenzie alleges that the trial court erred in not finding that he is entitled to interest on the amount due him pursuant to Iowa Code section 535.3 (interest on judgments and decrees). Carver counters that McKenzie did not preserve error, since he did not raise the issue of prejudgment interest in his objections to the report of the special master.

There is no merit in McKenzie's claim for prejudgment interest pursuant to section 535.3. We need not address the preservation of error claim.

Section 535.3 does not apply. The valuation of the stock and notes were determined in the master's report. An award of interest for a prior period would result in a duplicate recovery. More importantly, there was no judgment on which interest could run. The approval of the master's report was not the equivalent of a money judgment. *See Dillon v. City of Davenport,* 366 N.W.2d 918, 927 (Iowa 1985). An award of interest pursuant to section 535.3 would be improper in this case.

**V.** *Summary.* We hold that the trial court correctly upheld the special master's determination of the corporate buy-out figure and properly rejected McKenzie's motion to enlarge and amend its order to allow statutory prejudgment interest. We have considered other issues and Carver's motion for attorney fees and find no merit in them.

AFFIRMED.